**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 4 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

SERGIO ANTONIO MANJARREZ,

    Defendant-Appellant.

No. 03-5017

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 02-CR-62-H)**

---

Submitted on the briefs[*]

Julia O'Connell, Assistant Federal Public Defender, and Barry L. Derryberry, Research and Writing Specialist, Office of the Federal Public Defender, Tulsa, Oklahoma, for Defendant-Appellant.

David E. O'Meilia, United States Attorney, and Melody Noble Nelson, Assistant United States Attorney, Tulsa, Oklahoma, for Plaintiff-Appellee.

---

Before **MURPHY**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

---

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(A)(2). The case is therefore ordered submitted without oral argument.

**BALDOCK**, Circuit Judge.

Defendant Sergio Antonio Manjarrez entered a conditional guilty plea to possessing, with the intent to distribute, approximately twenty-nine kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1).  See Fed. R. Crim. P. 11(a)(2).  As part of his conditional plea, Defendant reserved the right to appeal the district court's denial of his motion to suppress the cocaine.  On appeal, Defendant argues: (1) the initial stop of his vehicle was unjustified; (2) his consent to questioning was involuntary and not supported by reasonable suspicion; and (3) the pat-down of his person was unlawful and vitiated any prior consent to search his car.  We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

I.

The historical facts as found by the district court and supported by the record are as follows:  On March 13, 2002, Oklahoma Highway Patrol Trooper Vernon Roland observed a Ford Mustang traveling east-bound on Interstate 44 near Stroud, Oklahoma.  According to Trooper Roland, the Mustang failed to signal when it exited the interstate into the toll plaza and failed to signal again when it changed lanes and proceeded towards the toll booth.  Trooper Roland stopped the Mustang.  Defendant exited the vehicle and approached Trooper Roland with his license and insurance information.  Trooper Roland explained to Defendant that he was only going to issue a warning citation and asked Defendant to accompany him to the patrol car.

2

In the patrol car, Trooper Roland and Defendant engaged in a brief conversation while Trooper Roland wrote the warning citation. Defendant had a heavy Spanish accent but was able to communicate with Trooper Roland in English. After issuing the warning, Trooper Roland handed Defendant his documents and told Defendant he was "through."

As Defendant opened the patrol car door, Trooper Roland asked Defendant if he would answer some additional questions. Defendant replied "okay." Trooper Roland asked Defendant if he was carrying any guns or alcohol in the car. Defendant replied "no." Trooper Roland then asked Defendant if he could search his car. Defendant replied "yes." Trooper Roland conducted a brief pat-down of Defendant before searching the car.

Trooper Roland retrieved his drug detection dog from the back of his patrol car. The dog conducted a "sniff" around Defendant's car. The dog alerted to the front bumper of the Mustang. Subsequently, Trooper Roland discovered several bundles of cocaine taped inside the bumper. Defendant was arrested for possession of cocaine.

Based on the foregoing, the district court, in a thorough order, denied Defendant's motion to suppress the cocaine. Specifically, the court concluded: (1) Defendant's initial stop was justified; (2) Defendant consented to the search of his car; and (3) the pat-down of Defendant did not vitiate his consent to search the car.

## II.

When reviewing the denial of a motion to suppress, we accept the findings of the

3

district court unless they are clearly erroneous. United States v. Patten, 183 F.3d 1190, 1193 (10th Cir. 1999). In reviewing the district court's findings, "we are mindful that at a hearing on a motion to suppress, the credibility of the witnesses and the weight to be given the evidence together with the inferences, deductions and conclusions to be drawn from the evidence, are to be determined by the trial judge." United States v. Werking, 915 F.2d 1404, 1406 (10th Cir. 1990). The ultimate determination of reasonableness under the Fourth Amendment is a question of law that we review *de novo*. United States v. Mikulski, 317 F.3d 1228, 1230-31 (10th Cir. 2003).

## A.

Defendant first argues his initial stop violated the Fourth Amendment. A traffic stop is a seizure under the Fourth Amendment. United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir. 1995) (en banc). "A traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation." Id. Whether the stop is routine or ordinary is immaterial and the subjective motivations of the officer are irrelevant. Id.; accord Whren v. United States, 517 U.S. 806, 810-18 (1996). "Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." Botero-Ospina, 71 F.3d at 786.

Trooper Roland testified he observed Defendant exit his lane from the turnpike without properly signaling. Trooper Roland also testified he observed Defendant change

4

lanes on his way to the toll plaza without properly signaling.  The district court

specifically found that Defendant "violated Oklahoma law when he failed to signal his

exit from the turnpike and his lane choice at the toll booth."  See 47 Okla. Stat. Ann.

§ 11-309(1).[1]  Defendant nevertheless argues that exiting the turnpike to the toll plaza

does not constitute a "lane change" as contemplated by § 11-309(1) and that he was not

required to signal when choosing a lane on his way to the toll plaza.  The district court,

however, concluded that "[b]ased on the video evidence, leaving the turnpike to go on to

the toll plaza is leaving a lane as contemplated by Oklahoma statutes and therefore,

precipitates an obligation to signal."[2]  We agree, and note that a signal is required when

exiting the interstate.  See, e.g., Okla. Dep't of Transp. Driver's Manual, Chap. 7- Lane

Usage and Maneuvers (requiring drivers that exit the expressway to signal at least 100

feet before exiting).  Therefore, the district court did not err in concluding Trooper

---

[1] The Statute states:

Whenever any roadway has been divided into two or more clearly marked
lanes for traffic, the following requirements in addition to all others
consistent herewith shall apply.
1. A vehicle shall be driven as nearly as practicable entirely within a single
lane and shall not be moved from the lane until the driver has first
ascertained that the movement can be made with safety and then given a
signal, not less than the last one hundred (100) feet traveled by the vehicle,
of his intention to change lanes.

[2] Defendant's motion to supplement the appellate record with the videotape of the
stop is allowed.

5

Roland had an objectively reasonable suspicion to stop Defendant for violating

Oklahoma traffic law.[3]

B.

Defendant next argues he was unlawfully detained once the purpose of the stop

was complete.  Typically, an officer must allow the driver to leave once the initial

justification for a traffic stop has concluded.  United States v. Ozbirn, 189 F.3d 1194,

1199 (10th Cir. 1999).  An "investigative detention usually must 'last no longer than is

necessary to effectuate the purpose of the stop,' and '[t]he scope of the detention must be

carefully tailored to its underlying justification.'"  United States v. Hunnicutt, 135 F.3d

1345, 1349 (10th Cir. 1998) (quoting Florida v. Royer, 460 U.S. 491, 500 (1983)).  A stop

generally ends when the officer returns the driver's license, registration, and insurance

information.  Werking, 915 F.2d at 1408.  At this point, questioning must cease and the

driver must be free to go.  Id.  This general rule, however, is subject to an important

exception.  Additional questioning unrelated to the traffic stop is permissible if the

detention becomes a "consensual encounter."  Hunnicutt, 135 F.3d at 1349.

Whether an individual consents to further questioning is based on the totality of

the circumstances.  Patten, 183 F.3d at 1194.  This determination ultimately calls for the

"refined judgment" of the trial court.  Id.  An encounter is consensual when a reasonable

---

[3] We need not discuss the alleged failure to signal in front of the toll plaza because
Defendant violated Oklahoma traffic law by failing to signal as he exited the interstate.

person would believe he was free to leave or disregard the officer's request for information. Werking, 915 F.2d at 1403. A consensual encounter is a voluntary exchange between the officer and the citizen in which the officer may ask non-coercive questions. United States v. West, 219 F.3d 1171, 1176 (10th Cir. 2000). A police officer does not have to inform the citizen they are free to disregard any further questioning for the encounter to be consensual. Id.

In this case, Trooper Roland returned Defendant's documents after writing the warning citation and told Defendant he was "through." At this point, the initial detention ceased and Defendant was free to go. As Defendant opened the patrol car door to exit, however, Trooper Roland asked Defendant if he would answer some additional questions. Defendant replied "okay." Thus, the district court found that Defendant "voluntarily consented to continue his contact with Trooper Roland." Defendant argues he did not consent because Trooper Roland had to repeat himself several times. Moreover, Defendant and Trooper Roland commingled both Spanish and English words throughout their encounter. We have held that a "working knowledge" of the English language is all that is required for an encounter to be consensual. United States v. Zubia-Melendez, 263 F.3d 1155, 1163 (10th Cir. 2001). A "working knowledge" exists if the individual has "sufficient familiarity with the English language to understand and respond" to the officer's questions. Id. Here, Defendant responded to most of Trooper Roland's questions without a problem, evidencing that he had a working knowledge of the English

language.  Therefore, the district court's finding that Defendant had sufficient familiarity with the English language to grant consent was not clearly erroneous.

Defendant also argues his consent was involuntary because of the "coercive" and "intimidating" circumstances surrounding the Trooper's questions.  More specifically, Defendant argues he was intimidated when Trooper Roland's drug detection dog began to howl loudly during the encounter.  For consent to be valid, the Government must show that consent was given without duress or coercion, express or implied.  Werking, 915 F.2d at 1409.  Here, nothing suggests that Trooper Roland coerced or intimidated Defendant.  Defendant voluntarily engaged in conversation with Trooper Roland and Defendant was free to end the conversation at anytime.  Defendant cites to no authority suggesting a howling drug dog may be intimidating or coercive.  The dog was in the back seat of the patrol car and was never in direct contact with Defendant.  Therefore, the district court did not err when it concluded the encounter was consensual.

C.

Defendant finally argues that Trooper Roland's pat-down search of his person was unlawful and that the pat-down vitiated his previous consent to search the car.  A pat-down is a "search" under the Fourth Amendment.  Terry v. Ohio, 392 U.S. 1, 19 (1968). Police officers may take reasonable steps necessary to protect their personal safety. United States v. Melendez-Garcia, 28 F.3d 1046, 1051 (10th Cir. 1994).  An officer may pat-down a suspect if the facts available to the officer would "warrant a man of

reasonable caution to believe that a frisk would be necessary to protect himself." United States v. McRae, 81 F.3d 1528, 1536 (10th Cir. 1996). The purpose of the limited pat-down search is not to discover evidence of a crime, "but to allow the officer to pursue his investigation without fear of violence." Adams v. Williams, 407 U.S. 143, 146 (1972). We consider the "totality of the circumstances" when evaluating the validity of a pat-down. Id.

In this case, Trooper Roland patted Defendant down for the Trooper's own safety. Trooper Roland, unassisted at the time, could not reasonably be expected to leave Defendant in his patrol car, turn his back on Defendant, insert his head into Defendant's car, and search the car without first checking Defendant for weapons. The record shows that Trooper Roland was concerned for his safety and wanted to conduct the search of Defendant's car without fear of violence. Accordingly, we hold that Trooper Roland's minimally intrusive pat-down of Defendant was lawful based on Defendant's prior consent to search his car.

In any event, because Trooper Roland discovered the cocaine pursuant to a search based on prior consent, the legality of the subsequent pat-down, which uncovered nothing, is not dispositive. Whether a pat-down search can vitiate *previously* given consent is an issue of first impression in this Circuit. Defendant fails to support his argument with any relevant authority and we have uncovered little. Our cases make clear that if a suspect is unlawfully searched or seized and the police *subsequently* obtain

9

consent, to prevail the Government must show that the consent was a "free and unconstrained choice," and that the consenting party's will was not overborne. Melendez-Garcia, 28 F.3d at 1053. The Government must also show that any prior illegality was sufficiently attenuated from the subsequent consent. Id. at 1054.

Here, the situation is distinct because Defendant consented prior to Trooper Roland's pat-down. We are unable to discern how a subsequent pat-down, lawful or not, could bear upon the voluntariness of Defendant's prior consent. The record in this case shows that Defendant's prior consent was sufficiently attenuated from the subsequent pat-down. Defendant freely and voluntarily consented to a search of his car during a consensual-encounter and nothing suggests Defendant's will was overborne. Defendant remained free, at all times, to disregard Trooper Roland's request. Therefore, the subsequent pat-down did not affect Defendant's prior consent.

Defendant argues he was unable to withdraw his previous consent to search the car due to the "intimidating" and "coercive" nature of the pat-down. An atmosphere of intimidation and coercion exists if there is evidence of "physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery." United States v. Pena, 143 F.3d 1363, 1367 (10th Cir. 1998); see also United States v. Davis, 202 F.3d 1060, 1062 (8th Cir. 2000). In Davis, a suspect claimed he was unable to end a consensual encounter with the police during his brief pat-down by the officer. Id. The Eighth Circuit held that the officer did "nothing to change the consensual nature of

the encounter except frisk [the suspect] for weapons. When that momentary seizure ended, [the suspect] remained free to answer [the officer's] questions or to leave." Id.

The record in this case is devoid of any evidence Trooper Roland intimidated or coerced Defendant. Simply, Trooper Roland briefly patted Defendant down for the Trooper's own safety. Trooper Roland did not raise his voice at Defendant, threaten Defendant, nor did he physically intimidate Defendant. Trooper Roland's pat-down was neither coercive or intrusive, but rather *de minimus*. Moreover, like the situation in Davis, Trooper Roland only momentarily patted Defendant down. Once the brief seizure ended, Defendant was again engaged in a consensual encounter and was free to withdraw his prior consent. Defendant never objected to Trooper Roland's search and never attempted to withdraw his prior consent. See United States v. Wacker, 72 F.3d 1453, 1470 (10th Cir. 1995) (explaining that once a consent to search is given, it may be limited or withdrawn at a later time. Any withdrawal or limitation, however, must be expressly and explicitly made). We find no merit in Defendant's argument that Trooper Roland's pat-down vitiated Defendant's prior consent to search the car.

AFFIRMED.