McCONNELL, Circuit Judge,
concurring.
It is not obvious to me that Mr. Magers was “objectively” free to terminate the encounter with the police, as the majority holds. Maj. Op. 346. That he was not handcuffed, and was handed his documents and told he could leave, would not be conclusive if other aspects of the “totality of the circumstances” indicated that this was not so. United States v. Manjarrez, 348 F.3d 881, 885-86 (10th Cir.2003). Here, two officers were questioning Mr. Magers’s passengers and had placed one of the passenger’s belongings on the trunk of his car in order to search them. While the officer dealing with Mr. Magers had returned his documents and told him he was free to leave, he could not do so without, at a minimum, asking officers to remove things from his car:
Q: And your testimony was that Mr. Magers could just take off?
A: He could have asked us, yes.
Transcript of Motion to Suppress, Testimony of Officer Fullwood at 66. A reasonable person might question whether he was free to leave if he had to ask the police to remove things from his car before he could actually do so.
And not all the officers shared Officer Fullwood’s view of the degree of freedom Mr. Magers enjoyed. One of the officers conducting the search of the bags testified that Mr. Magers was not free to leave:
Q: So basically, even though he had his credentials, he was detained, wasn’t he?
A: Yes, he was ...
Q: And we are still in agreement that the car could not leave?
A: This is correct ...
Q: So if Mr. Magers, even though he had his driver’s license, he couldn’t just take off because you were using the car?
A: Correct.
Transcript of Motion to Suppress, Testimony of Officer Crandall at 21-22. A flat statement by one of the officers that it was “correct” that the defendant “could not leave” is surely evidence that, “objectively,” he could not leave. At a minimum, a reasonable person in Mr. Magers’s position may well have shared that conviction.
*348 Even if Mr. Magers, after requesting that the police remove the items from the trunk of his car, was technically free to abandon his friends by the side of the road without transportation, there is room to doubt whether he would have been permitted to take his car with him. As Officer Crandall explained, the police were “using” the car in connection with their search of the passengers. Mr. Magers may have been free to leave only to the extent that he was willing and able to abandon his car as well as his friends and hike off.
I do not think we need to resolve the issue of whether Mr. Magers was detained for purposes of the Fourth Amendment, because it is clear from the facts of the case (and Mr. Magers does not argue otherwise) that any constraint on Mr. Magers to remain with his vehicle and friends was a product of a legitimate investigation of Mr. Magers’s passengers, for which the police had amply reasonable basis. Even if a legitimate detention of a vehicle’s passengers — and perhaps of the vehicle as well — has the incidental effect of detaining the vehicle’s driver, that detention is best understood as resulting from the driver’s attachment to his vehicle or his passengers rather than being a direct consequence of police activity. See INS v. Delgado, 466 U.S. 210, 218, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) (factory workers’ inability to leave while INS agents asking them questions regarding immigration status due to voluntary obligation to employer rather than police activity); Florida v. Bostick, 501 U.S. 429, 436, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (freedom of movement restricted by factor independent of police conduct — i.e., by being a passenger on a bus). That Mr. Magers abandoned neither car nor friends is ultimately attributable to his sense of his social responsibilities rather than to the activities of the police.
I therefore concur on the ground that, whether or not Mr. Magers was free to go in any technical sense, the constraints were the consequence of a legitimate detention of his passengers and therefore not a violation of his Fourth Amendment rights.