**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 24, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DERRICK RICHARDSON,

    Defendant - Appellant.

No. 05-5164
(D.C. No. 04-CR-187-002-TCK)
(N.D.OK)

**ORDER AND JUDGMENT**[*]

Before **HENRY, HOLLOWAY** and **LUCERO**, Circuit Judges.[**]

Defendant-appellant Derrick Richardson brings this direct appeal from his conviction on a single count of possession of five kilograms or more of cocaine with intent to distribute and aiding and abetting co-defendants Jessie Riser and Toya Berry in the offense. Following the denial of a motion to suppress the evidence, which had been joined by co-defendant Riser, Richardson entered a conditional plea of guilty to the charge. He was sentenced to 90 months' imprisonment, a five year term of supervised release, a fine of $5,000, and a special

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

assessment of $100.

# I

Defendant was in the front passenger seat of a rented car being driven by co-defendant Riser when the car was pulled over by a state trooper near Vinita, Oklahoma. Berry and a child were in the back of the car, which Berry had rented. The car had just passed through the main toll gate on the Will Rogers Turnpike when it was pulled over. The initial stop was based on the driver failing to signal when branching off from the turnpike into the toll plaza. III R. at 65-66. Whether this maneuver required a signal because it was either a lane change or an exit from the controlled access turnpike is the sole issue on appeal.

On this turnpike, the main toll plaza is near the mid-point, about five miles southwest of Vinita. Drivers with electronic signaling devices known as pike passes (which demonstrate pre-payment of tolls) continue straight ahead past the toll area, and are not required to slow down. The speed limit on the turnpike is 75 miles per hour. Drivers who are paying the toll in cash enter the toll plaza, which is to the right of the main roadway. Riser, driving the car in which Richardson was a passenger, did not signal when he went right into the toll booth area.

Although the record is slightly unclear on the point, it appears that drivers entering the toll booth area, which can properly be entered only from the right-hand lane, do not cross a lane marker. III R. at 70. This fact provides the basis for defendant's argument that no signal is required; he says that a signal is required only for changing lanes, and that this was not a change of lanes.

-2-

Because only the initial stop is challenged on appeal, we need not detail the facts relating to the conversations between officers and the car's occupants and other facts which aroused the officers' suspicions, nor the other events in the sequence. It is sufficient to note that eventually a trained dog alerted to the undercarriage of the car, where the spare tire was stowed, and that five packages each containing about one kilogram of cocaine were subsequently recovered from the undercarriage.

**II**

The trial court held an evidentiary hearing on the motion to suppress, at which the only two witnesses were State Trooper Hise, who made the initial stop, and Trooper Perry, who subsequently arrived to assist Trooper Hise. In a written order denying the motion to suppress, the district judge said that the evidence supported defendant's argument that no change of lane was involved in entering the toll area. A turn signal is required by statute when changing from a marked lane. The statute provides:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following requirements in addition to all others consistent herewith shall apply.
>
> 1. A vehicle shall be driven as nearly as practicable entirely within a single lane.
>
> 2. A vehicle shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety and then given a signal, not less than the last one hundred (100) feet traveled by the vehicle, of his intention to change lanes.

47 Okla. Stat. § 11-309.[1]  The district judge said that the "evidence does not show [the driver] violated this statute; he never changed lanes."  The judge concluded, however, that precedent required him to hold that the stop was lawful.

In *United States v. Manjarrez*, 348 F.3d 881 (10th Cir. 2003), this court considered a case with very similar facts except that the traffic stop there was made at the midway toll area of the Turner Turnpike in Oklahoma (roughly from Oklahoma City to Tulsa), rather than the Will Rogers Turnpike (roughly from Tulsa to Joplin, Missouri).  In that case, after viewing a video tape of the incident, a different district judge had found that the defendant had "violated Oklahoma law when he failed to signal his exit from the turnpike . . . ."  348 F.3d at 885.  The district judge in that case had also concluded that "leaving the turnpike to go on to the toll plaza is leaving a lane as contemplated by Oklahoma statutes and therefore, precipitates an obligation to signal."  *Id*.  This court affirmed, expressing its agreement with the district court's finding that the defendant had changed lanes and that "a signal is required when exiting the interstate."  *Id*.

Concluding that *Manjarrez* was controlling, the district judge in the instant case denied the motion to suppress and found the initial stop valid, although making it clear that he would have found otherwise if the case had been one of first impression.  The judge read *Manjarrez* as holding that "entering into the tollgate area is 'exiting' the toll road, even

---

[1]We quote the current version of the statute, which is substantively the same as an earlier version quoted by the district court.  The primary difference is that current subparagraphs one and two were in a single subparagraph prior to amendment of the statute in 2005.

though a driver remains in the very same lane from the time prior to approaching the toll area right up to the time he is at the actual tollbooth." Order at 5.

### III

The only issue Mr. Richardson raises on appeal is whether the initial stop was justified. It is well settled that a traffic stop is a seizure within the meaning of the Fourth Amendment and that a stop is valid if based on an observed traffic violation or reasonable, articulable suspicion that a violation has occurred. *See, e.g., United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001). In the present case the validity of the stop turns on whether a driver approaching the main toll plaza on the Will Rogers Turnpike is required to signal his intent to go right to the toll plaza when doing so does not involve crossing a lane marker.

Although this seems a very simple question, that appearance is deceptive because further examination reveals complications. The maneuver at issue is not easily determined to be either a lane change or an exit from the turnpike; paradoxically, though, it is problematic to view it as *not* either of those options.

On one hand, to say that entering the toll booth area is "exiting" the toll road seems contrary to the common understanding of the term, because the toll plaza is part of the turnpike. A driver has one option only after passing through the toll plaza, and that is to re-enter the main flow of traffic on the toll road. By contrast, ordinarily an "exit" leads the driver off of the toll road altogether and onto some other highway or street.

On the other hand, our holding in *Manjarrez* seems to bind us to the position that

entering the toll booth area is an "exit" from the toll road. And it does involve leaving the flow of traffic, so calling it an "exit" is not unreasonable, even though entering the toll plaza is different from the most common understanding of an exit from a controlled access highway.

When the focus is instead on whether there is a lane change involved in entering the toll area, again we confront something of a dilemma. The district judge found that there was no lane change because, as we understand his order, no lane marker is crossed. This view is easy to understand and has superficial validity, at least, but for one fact: The record shows that the right lane divides at the entry to the toll plaza. A driver with a pike pass can continue on the same path at the same speed, bypassing the toll booth area. A driver not having a pike pass must enter the toll booth area and stop at one of the booths to pay the toll. The common, everyday understanding of a "lane" does not include a branching point offering two alternative paths like this. And the evidence showed that the speed limit on the turnpike proper is 75 miles per hour, whereas upon entering the access lanes to the toll plaza the limit immediately drops to 45 miles per hour. III R. at 73.

We conclude, however, that these complications are immaterial in the end because our disposition is controlled by our prior opinion in *Manjarrez*. Our reading of *Manjarrez* differs from that of the district judge, at least as we understand his reading from his order in this case. The district judge seems to have viewed *Manjarrez* as holding that the driver in that case had exited the turnpike even though the driver had not changed lanes. But the trial judge in *Manjarrez* had held that entering the toll plaza was a lane change, and we said,

"[w]e agree," before adding that "a signal is required when exiting the interstate." 348 F.3d 885.  Thus, we read the case as holding that a signal was required both because the driver had changed lanes and because the driver had exited the roadway.

We have considered defendant's argument that there is an inadequate basis for concluding that the two turnpikes should be governed by the same rule.  It is true that our opinion in *Manjarrez* does not reveal whether a lane marker was crossed in entering the toll booth area of the Turner Turnpike.  But even if there were a lane marker crossed there, in contrast to this case, that case held that there was both a lane change and an exit involved in entering the toll plaza.  So, even accepting as not clearly erroneous the district judge's finding that there was no lane change here, we are still be bound by the holding in *Manjarrez* that there was an exit requiring a signal.

The judgment of the district court is therefore affirmed.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge

05-5164 - United States v. Richardson

**LUCERO**, joined by **HENRY**, Circuit Judges, concurring:

I agree with my respected colleagues that the language of United States v. Manjarrez, 348 F.3d 881 (10th Cir. 2003), controls this case, and I am compelled to join the majority opinion. I write separately to make an observation about our decision in Manjarrez.

Although Manjarrez violated 47 Okla. Stat. tit. 11, § 309(1) when he failed to signal before changing lanes as he approached a toll plaza, our opinion in that case appears to have used broader language than the facts necessitated. In Manjarrez we stated that under Oklahoma law, "a signal is required when exiting the interstate" and approaching a toll plaza. Id. at 885.

In this case the district court found that Richardson remained in the same lane as he approached the toll plaza on the Will Rogers Turnpike. As the right lane of the turnpike splits off to the right, thus "exiting" to form five toll lanes, the record suggests that a driver proceeding in the right lane of travel may pass through the toll booths without the necessity of changing lanes. Under these circumstances, our holding in Manjarrez leads to what appears to be a bizarre result – technically, Richardson may have "exited" the Will Rogers Turnpike to pay the required toll, but at no point did he change lanes in the process. Under these circumstances, a signal on his part in either direction would have misled other travelers on the turnpike into believing that he was going to change lanes, when in fact he did not intend to do so. On the other hand, he did technically exit the freeway so as to be ensnared by the express language of Manjarrez, which is why I refer to the result as bizarre. The Oklahoma Legislature may want to address this odd situation.

Absent en banc reconsideration of the language of <u>Manjarrez</u>, I am required to agree with my majority colleagues.  But, <u>Manjarrez</u> does appear to provide a basis for the ticketing of almost any vehicle that passes through the cash toll booths on either the Will Rogers or Turner Turnpikes, even when those vehicles do not change lanes in the process.