FILED
United States Court of Appeals
Tenth Circuit

**March 30, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

EDUARDO JIMENEZ-VALENIA, a/k/a
Eduardo Jimenez-Valencia,

Respondent–Appellant.

No. 10-4039
(D.C. No. 2:08-CR-00395-TC-1)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

Eduardo Jimenez-Valenia[1] appeals several rulings by the district court. Exercising

jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

**I**

**A**

Utah Highway Patrol Trooper Jared Withers stopped a truck driven by Jimenez for

speeding. Withers noticed, as he approached, that the truck body appeared to have been

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because there was conflicting evidence below as to the Appellant's last name, we refer to him as "Jimenez."

lifted.  After being asked for his license and registration, Jimenez provided Withers his Oregon driver's license but a title for the vehicle in the name of Juan Torrez-Chavez.  By way of explanation, Jimenez told Withers he was en route from California to Kansas and that Juan was a friend who loaned him the truck.

Withers and Jimenez conversed about Jimenez's trip and Withers' work.  Withers gave Jimenez a warning and wished him a nice day.  However, after walking away from Jimenez, he turned and asked for permission to ask "a few more questions."  Jimenez consented.  Withers asked if Jimenez had anything illegal in the car.  Jimenez indicated that he did not.  Withers asked for permission to search the truck.  Jimenez consented.

As he prepared to search the truck, Withers told Jimenez to "go stand about 100 feet" in front of the vehicle.  Withers informed Jimenez that "if he needed anything" he could "just call" for his attention.  Noticing that the vehicle was raised and the passenger side floorboard was covered with a mat rather than carpet, Withers suspected that there was a hidden compartment underneath the cab of the truck.  Withers peeled back a black console that was affixed to the transmission hump by bolts in the floor, suggesting an entrance to a compartment.  He began to remove the console, but elected to handcuff Jimenez while he searched the compartment.  He called Jimenez to the truck, told him that he had found the hidden compartment, and handcuffed him while he proceeded to explore the compartment.

Inside the compartment, Withers discovered packages wrapped in plastic. Believing the packages contained methamphetamine, he arrested Jimenez.  Nineteen

packages of methamphetamine were removed from the compartment, containing 6622 grams of a mixture that included 6370 grams of methamphetamine.

Jimenez filed a motion to suppress, arguing that Withers had prevented Jimenez from limiting or withdrawing his consent to search the truck. The district court assumed without deciding that Jimenez had a Fourth Amendment privacy interest in the truck, but rejected his argument that the Fourth Amendment prohibited the search.

**B**

Prior to the voir dire of the jury in Jimenez's trial, the trial judge expressed her intention to inform the potential jurors that Jimenez was "from Mexico" in order to explore potential juror biases. Concerned that the jury would infer from such a statement that Jimenez was in the country illegally, Jimenez's counsel requested, and the court agreed to, the alternative formulation that Jimenez "was not born in the United States." However, when the potential jurors were before the court, the district court instead stated that Jimenez was "not from the United States."

During questioning, several jurors expressed their concern that they would be biased in a case involving an illegal immigrant, apparently assuming that Jimenez was in the country illegally. Three other potential jurors were overheard having a "one-sided discussion about immigration."

After voir dire, defense counsel urged the judge to give a curative instruction. Ultimately, the court attempted to correct the error by informing the jury that "like many people who are here legally, Mr. Jimenez was just not born in the United States."

-3-

## C

One of the primary government witnesses at trial was Utah Bureau of Investigations Agent Kenneth Colyar. Colyar recounted his interview with Jimenez shortly after the arrest. Jimenez initially stated that he did not know about the drugs and offered to cooperate in the investigation. In order to encourage Jimenez to admit his involvement, Colyar told Jimenez that he had spoken to federal agents in California who were investigating Jimenez. The interview was admitted as evidence, including the portion in which Colyar told Jimenez he was under a federal investigation. During cross-examination, Jimenez's counsel attempted to impeach Colyar by pointing out that his statements to Jimenez regarding federal agents in California were false. The government objected, maintaining that Colyar had told the truth about his discussion with federal authorities or that he simply stretched the truth as an interrogation tactic. The district court allowed the questioning by defense counsel.

Asked the question in several different ways, Colyar confirmed that he had indeed spoken to authorities in California who were actively investigating Jimenez. Colyar testified further on re-direct that one of the agents he had talked to, Deputy Crean, was familiar with Jimenez's apartment complex and had recovered chemicals associated with methamphetamine preparation in the apartment complex's trash.

The judge gave a limiting admonition emphasizing that Colyar's testimony was not to be considered for the truth of whether law enforcement agents were investigating Jimenez or his apartment complex. Colyar finally admitted that he was exaggerating when he told Jimenez that he was the subject of a federal investigation. But during re-

direct he also emphasized that he had discussed with Crean the possibility that Jimenez was the source of the methamphetamine-related evidence found in his neighbor's garbage.

The defense sought to question Crean regarding whether he had such a conversation with Colyar, but the government objected to the use of such extrinsic character evidence under Federal Rule of Evidence 608(b). Sustaining the objection, the district court allowed only one line of questioning on the matter: defense counsel was allowed to ask whether Crean knew of any information that would have prompted him to investigate Jimenez. Crean replied that he did not.

**D**

Nathan Frisbie, Jimenez's jail cellmate, also testified on the government's behalf. He testified that Jimenez had confessed to him that he had known about the secret compartment under the transmission and was getting paid to transport the drugs. During an earlier interview with Withers, Frisbie said that Jimenez had admitted only that he had been arrested for possession. However, at trial, Frisbie admitted that he was lying during the first interview. In explaining why he had lied, Frisbie testified that he was concerned about his reputation as a "rat" and the presence of another police officer, Deputy Price. Frisbie felt that Price might have had lingering resentment toward him because he told Price's superiors that Price enabled Frisbie to steal drugs from the jail's evidence stock.

The day after his first interview with Trooper Withers, Frisbie filed a request form to speak with someone about Jimenez. After a second meeting, Frisbie swore that Jimenez had admitted his knowledge of the drugs.

At trial, Jimenez moved to admit a signed statement by Frisbie regarding Frisbie's theft of drugs. Again, the government objected that the evidence, either the written statement or a reading of the statement into evidence, was inadmissible under Rule 608(b). The district court sustained the objection.

## E

Jimenez was convicted of possession with intent to distribute 500 grams or more of methamphetamine. A Presentence Investigation Report ("PSR") calculated Jimenez's advisory sentence range under the United States Sentencing Guidelines as 235-293 months. Based on the testimony of a drug expert presented by the government, Agent Bryan, Jimenez argued that he was a minor participant in the conspiracy, and thus entitled to a six level reduction in his offense level under Guidelines §§ 3B1.2 and 2D1.1. But the district court determined he was not a minor participant because he was "valuable" to the drug operation, and sentenced Jimenez to 180 months' incarceration.

## II

Jimenez makes five arguments on appeal. He contends: (1) the district court clearly erred in concluding that the search of the truck did not violate the Fourth Amendment; (2) the district court plainly erred by not declaring a mistrial after its statements regarding Jimenez's nationality; (3) the district court erred by excluding impeachment evidence against Colyar; (4) the district court erred by excluding impeachment evidence against Frisbie; and (5) the district court clearly erred by denying Jimenez a sentence reduction as a minor participant in a conspiracy.

**A**

Jimenez argues that Trooper Withers' search of the truck violated Fourth Amendment because, although Withers obtained consent to search for drugs, he subsequently prevented Jimenez from withdrawing that consent by requiring him to stand one hundred feet away.

"In reviewing the denial of a motion to suppress," we view "the evidence in the light most favorable to the government and uphold[] the district court's factual findings unless clearly erroneous." United States v. Danhauer, 229 F.3d 1002, 1005 (10th Cir. 2000). In ascertaining the scope of an individual's consent to a search, we look to the totality of the circumstances. United States v. Espinosa, 782 F.2d 888, 892 (10th Cir. 1986). If someone consents to a search for a specific item, that consent extends to "those areas or containers that might reasonably contain those items." United States v. Kimoana, 383 F.3d 1215, 1223 (10th Cir. 2004). A person who has consented to a search may withdraw his consent as long as he communicates his withdrawal to the officer. United States v. Manjarrez, 348 F.3d 881, 888 (10th Cir. 2003).

It is undisputed that Withers asked for permission to search the truck and Jimenez gave him permission. Prior to asking if he could search, Withers made quite clear that he suspected Jimenez of possessing drugs somewhere in the truck. The search of the floor of the passenger compartment and the undercarriage was within the scope of Jimenez's general consent. See Kimoana, 383 F.3d at 1223; see also United States v. Marquez, 337 F.3d 1203, 1206, 1209 (10th Cir. 2003) (some disassembly of a vehicle may be within the scope of a general search). Jimenez never withdrew his consent for the search.

-7-

However, Jimenez contends that the search was nonetheless illegal because he did not have the underlined opportunity to withdraw his consent because he could not see what Withers was doing or communicate with him. Jimenez relies primarily on a Ninth Circuit case, United States v. McWeeny, 454 F.3d 1030 (9th Cir. 2006). McWeeny concluded that general consent to search a vehicle may have been vitiated when a police officer handcuffed a suspect and ordered him to turn away from the vehicle, rendering him unable to observe the search. Id. at 1036. The court held that the proper inquiry was whether "the reasonable person would believe that he or she had no authority to limit or withdraw [the] consent." Id.

We need not reach the persuasiveness of McWeeny's logic because, even in that case, the touchstone of the inquiry was whether the suspect was coerced. Id. Jimenez was not coerced. He was asked to stand one hundred feet away, but assured that he could call out to the officer at any time. He was not handcuffed until after the incriminating compartment was found. Indeed, Jimenez was on notice of the discovery of the compartment and had opportunity to withdraw consent to the search. And Withers did not exceed the scope of Jimenez's consent. Therefore, the search of the vehicle did not violate the Fourth Amendment.

**B**

Jimenez argues that the district court should have declared a mistrial when it became apparent that several of the potential jurors had interpreted a statement by the

judge as implying that Jimenez was in the United States illegally.  Under plain error review,[2] Jimenez's argument fails.

We reverse on plain error review only if "there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  United States v. Gonzalez-Huerta, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) (quotation omitted).  In determining if a defendant's right to an impartial jury has been violated, we look to "those persons ultimately empaneled and sworn, not to those who are excused from service."  United States v. Lacey, 86 F.3d 956, 969 (10th Cir. 1996).  Additionally, we must presume that juries obey curative instructions.  See Zafiro v. United States, 506 U.S. 534, 540 (1993).

Jimenez refers primarily to the statements of rejected jurors in contending that the jury inferred that he was in the country illegally.  None of the empaneled jurors' responses to questions indicated any such inference.  The judge also issued a limiting instruction telling the jury that Jimenez's ancestry was irrelevant.  Although the unempaneled jurors' inference might provide some evidence that the rest of the jury drew a similar inference, it is not "clear or obvious" that the empaneled jury was biased.  See Gonzalez-Huerta, 403 F.3d at 732.

---

[2] The government argues that Jimenez waived review of this argument because defense counsel knew it could move for a mistrial but chose not to do so.  See United States v. Cruz-Rodriguez, 570 F.3d 1179, 1183 (10th Cir. 2009) (distinguishing waiver and forfeiture).  However, there is insufficient evidence for us to conclude that defense counsel deliberately considered but rejected moving for a mistrial, so we review for plain error.  See United States v. Zubia-Torres, 550 F.3d 1202, 1204-07 (2008).

# C

Jimenez argues that the district court abused its discretion in two of its evidentiary rulings. We assume without deciding that he is correct that the district court erred; however, the cumulative effect of these errors was harmless.

Improper exclusion of evidence is subject to harmless error analysis. United States v. Clifton, 406 F.3d 1173, 1179 (10th Cir. 2005). We examine "the record as a whole de novo to evaluate whether the error is harmless." United States v. Magleby, 241 F.3d 1306, 1317 (10th Cir. 2001) (quotation omitted). Although Deputy Crean's testimony might have helped resolve any residual confusion remaining after Agent Colyar's testimony, defense counsel was able to make its point that Crean was not investigating Jimenez prior to his arrest. Additionally, Colyar's own admissions on redirect confirmed that he lied to Jimenez during the interrogation. Frisbie's statement is simply unhelpful to the defense. Although the statement contains slightly different details than Frisbie's testimony, it does not contain a smoking gun and is generally consistent with the testimony Frisbie gave.

Crean's testimony and Frisbie's statement would have had little probative value as impeachment evidence, and we are confident that the errors did not have "a substantial influence on the outcome." Clifton, 406 F.3d at 1179. The government presented overwhelming evidence that Jimenez knew of the drugs in the car, including evidence that Jimenez drove hundreds of miles out of his way en route from Santa Rosa, Frisbie's statement to the police, which contained details that he could not have known unless Jimenez had told him, and the implausibility of a drug trafficker entrusting over a million

-10-

dollars of drugs to someone who is unaware that he is transporting drugs. In the face of this evidence strongly supporting the jury verdict, the exclusion of cumulative impeachment evidence was harmless. See id. at 1180.

## D

Finally, Jimenez argues that he was entitled to a six-level reduction for being a "minor" participant in a drug conspiracy. U.S.S.G. § 3B1.2. We review the district court's denial of such a reduction for clear error. United States v. Virgen-Chavarin, 350 F.3d 1122, 1131 (10th Cir. 2003). Although Jimenez appears to have been no more than a drug courier, we have held that this alone does not mandate the conclusion that he was a minor participant. United States v. Arrendondo-Santos, 911 F.2d 424, 426 (10th Cir. 1990). The district court found that Jimenez was "valuable" to the drug operation and duly refused to apply the reduction. Its conclusion was not clearly erroneous.

## III

For the foregoing reasons, we **AFFIRM**. We also **GRANT** Jimenez's motion to supplement the record on appeal.

Entered for the Court

Carlos Lucero
Circuit Judge