**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 19, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

MARK ANTHONY WILLIAMS, a/k/a
Tetris Pachino, a/k/a Lanique Lamarko,

      Defendant - Appellant.

No. 11-5000
(D. N.D. Okla.)
(D.C. No. 4:10-CR-00076-CVE-1)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN,** Circuit Judge, **BRORBY,** Senior Circuit Judge, and **HOLMES**, Circuit Judge.

Following a routine traffic stop, police charged Mark Williams with one count of being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1), and one count of possessing a firearm after being convicted of a misdemeanor crime of domestic violence, *see* 18 U.S.C. § 922(g)(9). After the district court denied his motion to suppress, he

---

[*] Oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). We have decided this case on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

proceeded to trial and was found guilty of both crimes. On the government's motion, the district court dismissed the § 922(g)(9) conviction, and sentenced Williams to eighty months imprisonment. On appeal, he challenges the district court's denial of his motion to suppress. We affirm.

## BACKGROUND

At the hearing on the motion to suppress, Tulsa police officer James Bohanon recounted the details surrounding Williams's arrest. Bohanon said he was patrolling a high-crime area with his partner when they observed a group of men crossing the street at less than a ninety-degree angle, in violation of the Tulsa traffic code. Still on the street, the men proceeded to walk with the flow of traffic, another traffic violation. The officers, who drove an unmarked pickup truck, initiated a traffic stop. As they pulled up, one man turned his back and walked briskly from the truck. Bohanon's partner followed on foot, leaving Bohanon with the remaining four, including Williams, who by this point had begun fidgeting with his waistband, raising Bohanon's suspicion he may be concealing a weapon. As a precautionary measure, Bohanon instructed the four men to place their hands on the hood of the truck. As the men lined up, Bohanon saw Williams drop a handgun from his waistband and kick it under the truck. Bohanon recovered the gun and arrested Williams.

Williams's fiancée Lenora Davis recounted an entirely different sequence of events. Davis testified she had been walking with Williams and his two stepsons in the moments leading up to the traffic stop. She said they had been on a walking path, not the street, and that two additional men had joined the group just seconds before the officers

arrived.  According to Davis, it was one of those men, a man she called "Black," who brought the gun.  She said Black tried to hand the gun to Williams while the group was lined up, but Williams refused it.  Davis claimed to have witnessed the entire arrest from just feet away, in plain sight of the officers.

The district court found Davis's testimony incredible and credited Bohanon's version of the story.   It is implausible, the court explained, that four people could walk on the path together, as Davis had testified, because the path was only one-foot wide. And still more implausible is the notion that the officers would have secured everyone at the scene *except* Davis, leaving her standing feet away while the rest of the group was detained.  In the end, Davis's story did not add up, and the court found it "extremely unlikely" that Officer Bohanon was mistaken as to who dropped the gun.  (R. Vol. I at 40.)

## DISCUSSION

Williams renews his objection to the stop resulting in his arrest, questioning both the officers' authority to seize the group and the propriety of their conduct once they did. Without expressly challenging the findings of the district court, he maintains the officers lacked a lawful basis under the Fourth Amendment for the stop because the minor traffic offenses were not sufficiently weighty to justify the interference.

Since traffic stops bear more in common with investigative detentions than custodial arrests, we evaluate them under the principles set forth in *Terry v. Ohio*, 392 U.S. 1 (1968).  *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005).  An investigative detention is proper under *Terry* if justified from the start and "reasonably

related in scope to the circumstances which justified the interference in the first place." 392 U.S. at 20. Where an officer has reasonable suspicion of criminal activity, an investigative stop is reasonable under the Fourth Amendment without regard to the officer's motivations. *Whren v. United States*, 517 U.S. 806, 811-13 (1996). This holds true for minor offenses, like traffic violations, which commonly justify investigative detentions. *Id*.; *Bradford*, 423 F.3d at 1156. In reviewing the denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous. *United States v. Wood*, 106 F.3d 942, 945 (10th Cir. 1997). Since Williams does not challenge the district court's findings, we accept them as correct. *See United States v. Andrus*, 483 F.3d 711, 716 (10th Cir. 2007).

Williams' objections to the traffic stop are without merit. The stop progressed in three stages, and at each one the officers acted within the scope of their authority under *Terry*. At the first stage, the officers made contact with the group. This was a routine protocol, justified by the two traffic violations. *See Whren*, 517 U.S. at 812 (traffic violation sufficient to justify initial detention); *United States v. McHugh*, 639 F.3d 1250, 1255 (10th Cir.), *cert. denied*, 132 S. Ct. 278 (2011); *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995). At the second stage, Bohanon instructed the men to place their hands on the hood of the truck. This was a precautionary measure, justified by his reasonable belief that two of the men were threatening to flee, and that Williams may have been concealing a weapon. *See United States v. Manjarrez*, 348 F.3d 881, 886-87 (10th Cir. 2003); *United States v. Perdue,* 8 F.3d 1455, 1462 (10th Cir. 1993) (Officers may take steps "reasonably necessary to protect their personal safety and maintain the

status quo during the course of [the] stop.") (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)).  At the final stage, Bohanon arrested Williams.  This, too, was an appropriate and logical response to what he had just witnessed: Williams taking a handgun from his waistband, dropping it on the ground, and kicking it under the truck.  By this point, the investigative detention had ripened into an arrest.

Williams contends an officer's authority to conduct a *Terry* stop in response to a traffic violation does not extend to pedestrian violations like the ones at issue here.  He provides no authority for this proposition, only his observation that most situations giving rise to *Terry* stops involve motor vehicles.  Our decisions applying *Terry* admit of no such distinction.  Indeed, we have upheld the authority of the police to initiate stops for traffic violations committed on foot.  *See United States v. Burleson*, 657 F.3d 1040, 1047 (10th Cir. 2011).

AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge