**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 12, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

CRUZ GARCIA,

      Defendant - Appellant.

No. 13-2155

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 5:12-CR-01488-RB-1)**

---

James N. Langell, Assistant Federal Public Defender, Office of the Federal Public Defender for the District of New Mexico, Las Cruces, New Mexico, appearing for the Appellant.

Laura Fashing, Assistant United States Attorney (Steven C. Yarbrough, Acting United States Attorney, with her on the brief), Office of the United States Attorney for the District of New Mexico, Albuquerque, New Mexico, appearing for the Appellees.

---

Before **BRISCOE, EBEL,** and **MATHESON,** Circuit Judges.

---

**MATHESON,** Circuit Judge.

---

Officer Barton Devos discovered a gun magazine containing ammunition during a protective pat down of Cruz Garcia. A grand jury charged Mr. Garcia with being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Mr. Garcia moved to suppress evidence of the ammunition on Fourth Amendment grounds, contending the pat down search was unjustified. The district court denied the motion after concluding the arresting officer had reasonable suspicion that Mr. Garcia was armed and dangerous. Mr. Garcia entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A. *Factual History[1]*

On February 4, 2012, at approximately 7:45 p.m. in Roswell, New Mexico, Patrol Officer Devos of the Roswell Police Department conducted a pat-down search of Mr. Garcia after a traffic stop.

Officer Devos was driving on sparsely travelled South Monroe Avenue when he noticed a green Hyundai with a cracked windshield going in the opposite direction. Concerned the cracks obscured the driver's view, Officer Devos turned around and pulled over the Hyundai.

---

[1] We recount the facts from the suppression hearing, presenting them in the light most favorable to the Government. *See United States v. Hunter*, 663 F.3d 1136, 1141 (10th Cir. 2011).

Officer Devos approached the driver, who identified himself as Gilbert Romero. Mr. Garcia was sitting in the passenger seat. A records check on "Gilbert Romero" showed a suspended license for that name. Officer Devos arrested the driver.[2] After the arrest, Officer Devos decided to have the vehicle towed because it could not be driven safely with its cracked windshield. Before towing the vehicle, however, Roswell Police Department regulations required Officer Devos to inventory the contents of the car. Due to staffing limitations, Officer Devos had to do the inventory by himself.

Before the inventory, Officer Devos asked Mr. Garcia to exit the vehicle. Mr. Garcia did not make eye contact with Officer Devos, and he kept playing with his hands. Officer Devos thought Mr. Garcia was nervous or possibly hiding something.

Officer Devos recognized Mr. Garcia from a recent encounter and had learned months earlier from a fellow officer that Mr. Garcia had a criminal history, which included at least one violent felony. Officer Devos learned that the most recent felony was a 2003 armed robbery. Officer Devos also knew Mr. Garcia was "a known drug user, particularly heroin." ROA, Vol. III at 11.

Officer Devos had encountered Mr. Garcia two weeks earlier. On January 21, 2012, Officer Devos was driving in front of Mr. Garcia's residence when he saw Mr.

---

[2] Officer Devos later discovered during a conversation with the driver that he was not Gilbert Romero but Joe Maner. Officer Devos learned the identity of Mr. Maner only after arresting him for driving with the suspended license connected to the name "Gilbert Romero." But it turned out that Mr. Maner's license was suspended as well.

Garcia on the front porch. Knowing a warrant was out for Mr. Garcia's arrest, Officer Devos said, "Cruz, stop." ROA, Vol. III at 9. Mr. Garcia looked at Officer Devos and ran inside the house. Officer Devos approached the front porch and told a woman there to tell Mr. Garcia to come out because there was a warrant out for his arrest. Instead of coming out the front door, Mr. Garcia ran out the back door and down an alley.

Officer Devos chased Mr. Garcia on foot and finally cornered him. Mr. Garcia turned toward Office Devos and "took a fighting stance with his fists clenched." ROA, Vol. III at 10. Officer Devos deployed his Taser, striking Mr. Garcia in the chest and abdomen. Shortly thereafter, other officers arrived and took Mr. Garcia into custody. Mr. Garcia was not armed at any point during this encounter.

On the evening of the traffic stop, Officer Devos decided to pat Mr. Garcia down for weapons because of (1) his previous encounter with Mr. Garcia, (2) Mr. Garcia's criminal history, which included an armed robbery felony, (3) his concern that he was alone and would have to turn his back to Mr. Garcia while performing the inventory, (4) Mr. Garcia's nervousness (as indicated by his avoiding eye contact and fidgeting with his hands), and (5) Mr. Garcia's history with drugs.

During the pat down, Officer Devos felt what he thought was a gun magazine in Mr. Garcia's front right pocket. He asked what the object was, and Mr. Garcia answered, "A gun clip." ROA, Vol. III at 23. Officer Devos asked Mr. Garcia to pull the object out of his pocket. Mr. Garcia complied and placed a magazine on top of the Hyundai. The magazine contained seven .380 caliber Winchester cartridges. Officer Devos then

-4-

handcuffed Mr. Garcia and had him sit on the curb until the inventory was finished. After the inventory, Officer Devos took off the handcuffs and told Mr. Garcia he was free to go.

Later, Officer Devos arrested Mr. Garcia for being a felon in possession of ammunition.

## B. *Procedural History*

Because of his prior convictions,[3] a federal grand jury indicted Mr. Garcia on one count of felony possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Mr. Garcia moved to suppress the evidence found during the pat down, arguing the initial stop was not based on reasonable suspicion of a traffic offense and Officer Devos did not have reasonable suspicion that Mr. Garcia was armed and dangerous.

After assigning the case to a magistrate judge and considering the magistrate judge's Proposed Findings and Recommended Disposition, the district court held Officer Devos had reasonable suspicion to stop the vehicle and pat down Mr. Garcia. The district court based the pat-down decision on several factors, including (1) Mr. Garcia's combative conduct during his previous encounter with Officer Devos; (2) Mr. Garcia's

---

[3] At the time of the traffic stop, Officer Devos knew Mr. Garcia had a criminal record and had specific knowledge only of Mr. Garcia's conviction for armed robbery in 2003. The indictment, however, noted Mr. Garcia's additional convictions for other offenses.

criminal history, which included an armed robbery; (3) that "Officer Devos made this traffic stop while he was alone, at night, on a road that does not have much traffic" and had to turn his back to Mr. Garcia to conduct the inventory search; and (4) Mr. Garcia's nervous behavior.[4] ROA, Vol. I at 94-95. The district court found reasonable suspicion because a "reasonably prudent individual in Officer Devos's circumstances would likely be concerned for his safety." *Id.* at 95.

Mr. Garcia entered a conditional guilty plea, reserving his right to appeal the district court's ruling on the motion to suppress. The district court sentenced Mr. Garcia to 30 months in prison to be followed by three years of supervised release. Mr. Garcia now appeals the denial of his motion to suppress on the issue of reasonable suspicion to justify the pat down.[5]

## II. **DISCUSSION**

### A. *Standard of Review and Legal Background*

In reviewing a district court's denial of a motion to suppress, we review factual findings for clear error, viewing the evidence in the light most favorable to the Government. *See United States v. Hunter*, 663 F.3d 1136, 1141 (10th Cir. 2011); *United*

---

[4] The district court said that Officer Devos's knowledge of Mr. Garcia's past drug use did not "contribute[] to Officer Devos's reasonable belief that [Mr. Garcia] was armed and dangerous." ROA, Vol. I at 95.

[5] Mr. Garcia does not appeal the traffic stop issue.

*States v. Karam*, 496 F.3d 1157, 1161 (10th Cir. 2007). We review de novo the ultimate determination of the reasonableness of a search under the Fourth Amendment. *Karam*, 496 F.3d at 1161.

The Fourth Amendment protects persons "against unreasonable searches and seizures." U.S. Const. amend. IV. A pat down is a search and therefore must be reasonable. *See Terry v. Ohio*, 392 U.S. 1, 19 (1968). Pat-down searches are constitutional when an officer has reasonable suspicion that an individual is "armed and dangerous." *United States v. Rice*, 483 F.3d 1079, 1082 (10th Cir. 2007).

The primary justification for a pat-down search is an officer's concern "that [his or her] safety or that of others was in danger." *Terry*, 392 U.S. at 27. Even when an officer had limited "specific information leading him to believe that [an individual] was armed or dangerous" and no knowledge of the individual's having possessed a weapon, we have held that the officer's safety concern justified a pat down. *United States v. McRae*, 81 F.3d 1528, 1536 (10th Cir. 1996) ("The facts available to Officer Colyar here (he was alone on an isolated stretch of highway, he was about to engage in a search of a car, and he had just been warned to approach Mr. McRae with 'extreme caution') would warrant a man of reasonable caution to believe that a frisk would be necessary to protect himself.");[6] *see also United States v. Manjarrez*, 348 F.3d 881, 886-87 (10th Cir. 2003)

_____

[6] The court in *McRae* also mentioned that Mr. McRae's decision to put on his jacket while exiting his vehicle contributed to the officer's suspicion Mr. McRae might
Continued . . .

("The purpose of the limited pat-down search is not to discover evidence of a crime, 'but to allow the officer to pursue his investigation without fear of violence.'") (quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972)); *United States v. Brown*, 232 F.3d 589, 594 (7th Cir. 2000) (individual "acting erratically and somewhat aggressively throughout the late afternoon to early evening period" roused officer's concern for his own safety and thus justified the officer's pat-down search, despite no specific suspicion of a weapon).

The reasonable suspicion needed to justify a pat-down search "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002). It must meet only a "minimum level of objective justification." *Rice*, 483 F.3d at 1083 (quotations omitted). The reasonable suspicion analysis does not consider each of an officer's observations in isolation, but rather is "based on the totality of the circumstances, taking into account an officer's reasonable inferences based on training, experience, and common sense." *Id.* The totality of the circumstances test looks at the officer's knowledge and observations as well as the circumstances in which the officer is working. *See id.* at 1084-85.[7]

_____

be armed and dangerous, but this was the only specific evidence the officer mentioned to suggest Mr. McRae ever possessed a weapon. *See McRae*, 81 F.3d at 1536.

[7] The dissent addresses the reasonable suspicion test from a slightly different perspective by focusing on (1) armed and (2) dangerous as elements in isolation rather
Continued . . .

## B. *Reasonable Suspicion Justified the Pat Down*

Each factor Officer Devos identified is relevant to the reasonable suspicion analysis, even if not sufficient by itself to decide the outcome. Those factors and Officer Devos's concern for his safety establish reasonable suspicion sufficient to pass constitutional muster.

We first analyze each of the factors: (1) Officer Devos's previous encounter with Mr. Garcia, (2) Mr. Garcia's criminal history, (3) Officer Devos's working conditions,

_____

than as co-dependent. We agree the "armed and dangerous" test is conjunctive, but the dissent's view forecloses consideration of how an officer's suspicion that an individual is dangerous can affect that officer's suspicion that an individual is armed, and vice versa. This omission undervalues officers' concern "that [their] safety or that of others was in danger." *Terry*, 392 U.S. at 27; *see also United States v. Morrison*, 58 F. App'x 381, 384 (10th Cir. 2003) (unpublished) ("The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.") (unpublished) (quoting *Terry*, 392 U.S. at 27)). Although not precedential, unpublished decisions may be cited for their persuasive value. 10th Cir. R. 32.1(A).

The dissent further notes that requiring an officer to have reasonable suspicion of an individual being armed *and* dangerous makes sense as a practical matter: "If an officer does not reasonably believe the suspect is armed, there would be no reason for the officer to engage in a *Terry* pat down because the officer would have no legitimate fear of a concealed weapon that could be used to harm." Dissent at 3. But this reasoning forecloses the possibility of an officer's concern about an individual's dangerousness contributing to the officer's reasonable suspicion the individual is armed. The dissent concedes there are instances when an individual's past criminal history or current involvement in a crime support a finding of reasonable suspicion—even without specific signs the individual is presently carrying a weapon. *See United States v. Garcia*, 459 F.3d 1059, 1064 (10th Cir. 2006) (holding that "a connection with drug transactions can support a reasonable suspicion that a suspect is armed and dangerous"); *Rice*, 483 F.3d at 1084-85 (holding that Mr. Rice's extensive criminal history of crimes with weapons combined with the encounter occurring in a high-crime area at a late-night hour support a conclusion of reasonable suspicion).

and (4) other, less significant factors. We then present a totality of the circumstances analysis.

1. **Mr. Garcia's Previous Encounter with Officer Devos**

Two weeks before the traffic stop and pat down of Mr. Garcia's person, Mr. Garcia ran from Officer Devos and then aggressively confronted him when he could no longer run. Officer Devos used a Taser on Mr. Garcia to subdue him. The district court found this encounter to be a significant reasonable suspicion factor. Mr. Garcia and the dissent contend this incident should carry little weight because Mr. Garcia was not armed. Because the reasonable suspicion test is broad enough to include consideration of aggressive actions—including actions without weapons—we agree with the district court that this encounter supports reasonable suspicion.

This circuit and other circuits have determined that an officer's knowledge of an individual's recent aggressive conduct is relevant to reasonable suspicion. In *United States v. Sanchez*, 519 F.3d 1208, 1216 (10th Cir. 2008), we held that officers had reasonable suspicion to perform a pat-down search of Mr. Sanchez after (1) receiving information from an informant that an individual had slapped a woman and (2) finding a concealed weapon on an occupant of a vehicle associated with the assault but not the vehicle in which Mr. Sanchez was a passenger. *See also Brown*, 232 F.3d at 594 (individual "acting erratically and somewhat aggressively throughout the late afternoon to early evening period" by running over a fence with his vehicle roused officer's concern for his own safety and thus justified the officer's pat-down search, despite no specific

-10-

suspicion of a weapon); *United States v. George*, 732 F.3d 296, 300 (4th Cir. 2013) *cert. denied*, 13-8596, 2014 WL 515959 (U.S. Mar. 10, 2014) (officer's observation of "vehicle aggressively chasing the vehicle in front of it, following by less than one car length" and turning right through a red traffic light fast enough "to cause the vehicles' tires to screech" contributed, among other factors, to the officer's reasonable suspicion sufficient to conduct a pat-down search for weapons).

Although Mr. Garcia did not possess a weapon during the previous encounter, the reasonable suspicion test does not require Officer Devos to be "absolutely certain that the individual is armed; [rather] the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry,* 392 U.S. at 27. Officer Devos knew Mr. Garcia was able and willing to act combatively toward police officers in confrontational situations. Requiring Mr. Garcia to exit a vehicle following the arrest of the driver to allow Officer Devos to inventory and impound that vehicle had as much or more potential to be a confrontational situation as the previous encounter. Officer Devos previously tasered Mr. Garcia and facilitated his arrest, which could reasonably raise Officer Devos's suspicion that Mr. Garcia had a motive for revenge.

In sum, Officer Devos's previous encounter with Mr. Garcia provided ample ground for officer safety concern even though Mr. Garcia did not have a gun on that occasion.

## 2. **Mr. Garcia's Criminal History**

Officer Devos knew Mr. Garcia had a criminal record that included a 2003 armed robbery. Mr. Garcia and the dissent contend the conviction's nine-years-old status marginalizes its relevance for reasonable suspicion. We disagree. Not only did Mr. Garcia previously possess a weapon, he used it in a crime of violence. We do not think the passage of time significantly diminishes the relevance of this criminal history in the context of an officer in the field assessing a safety risk. *See United States v. Santos*, 403 F.3d 1120, 1132 (10th Cir. 2005) ("[I]n conjunction with other factors, criminal history contributes powerfully to the reasonable suspicion calculus.").

An officer's knowledge of past criminal conduct is probative of whether the defendant is armed and dangerous, especially if a weapon was involved. *See, e.g.*, *Rice*, 483 F.3d at 1081-82 (the report from police dispatch mentioned that Mr. Rice was "known to be armed and dangerous" (quotations omitted));[8] *United States v. Garcia*, 459 F.3d 1059, 1064 (10th Cir. 2006) (stating that a defendant's history of drug trafficking— which itself is often connected with firearms—contributes to an officer's reasonable

_____

[8] The dissent's view of *Rice* seems confined to the statement that the officer in that case "could not perform a pat-down search for weapons unless he reasonably suspected that [Mr.] Rice might be carrying one." *Rice*, 483 F.3d at 1084. But the court in *Rice* did not confine its reasonable suspicion analysis to specific observations suggesting Mr. Rice was presently armed. Rather, the court concluded the officer possessed reasonable suspicion based upon (1) Mr. Rice's history of weapons crimes and (2) the circumstances surrounding the pat down, including Mr. Rice being stopped in a high-crime area late at night. *Id.*

-12-

suspicion that the defendant is armed and dangerous); *McRae*, 81 F.3d at 1536 (drug trafficking).[9]

Our decision in *McRae* is instructive because there was no direct evidence that Mr. McRae had ever actually possessed a gun. Mr. McRae had been convicted of drug trafficking. Although the dates of Mr. McRae's convictions were unreported, we said the officer could reasonably infer previous gun possession. In this case, Mr. Garcia was found guilty of armed robbery—and, therefore, found to have actually possessed a weapon—beyond a reasonable doubt. *See United States v. Powell*, 666 F.3d 180, 187-88 (4th Cir. 2011) (finding an officer's knowledge of a past armed robbery conviction of undetermined age relevant to reasonable suspicion, but insufficient on its own).

Officer Devos could infer from Mr. Garcia's criminal record that he had the ability to secure a weapon and the propensity to use it in criminal activity. We conclude Officer Devos's knowledge of the armed robbery conviction supported reasonable suspicion that Mr. Garcia was armed and dangerous.

3. **Officer Safety: Time, Place, and the Inventory Search**

Officer Devos stopped the vehicle on a sparsely travelled street. He needed to turn his back to Mr. Garcia to conduct the inventory search. The district court properly relied

---

[9] None of these cases report dates of past convictions or suggest older convictions are irrelevant to reasonable suspicion.

-13-

on these factors in determining that Officer Devos was reasonably concerned for his safety.

Mr. Garcia distinguishes this case from those involving an arrest or pat down in high-crime areas late at night. He is correct to a degree. But the circumstances here—a nighttime stop in a sparsely travelled area—would still have heightened a reasonable officer's concerns for safety, especially in the context of a single-officer inventory search. This court has twice ruled that similar circumstances were relevant to officer safety. *See McRae*, 81 F.3d at 1536; *Manjarrez*, 348 F.3d at 887.

In *McRae*, an officer frisked Mr. McRae after obtaining consent to search Mr. McRae's vehicle. *McRae*, 81 F.3d at 1531-32. The court concluded the officer had reasonable suspicion to frisk Mr. McRae because (1) "a search of the car might compel Officer Colyar to turn his back on Mr. McRae, and the two men were on an isolated stretch of highway"; (2) the officer received information that Mr. McRae has a criminal history and should be approached with "extreme caution"; and (3) Mr. McRae put on his jacket before exiting his vehicle, and "a jacket is a likely place in which to store a weapon." *Id.* at 1536.

In *Manjarrez*, an officer frisked Mr. Manjarrez after obtaining consent to search Mr. Manjarrez's vehicle. *Manjarrez*, 348 F.3d at 884. Unlike the officer in *McRae*, however, the officer in *Manjarrez* had no knowledge of any previous criminal history, and Mr. Manjarrez was not acting suspiciously. *Id.* The court concluded that the officer "could not reasonably be expected to leave Defendant in his patrol car, turn his back on

-14-

Defendant, insert his head into Defendant's car, and search the car without first checking Defendant for weapons." *Id.* at 887.

Although neither *McRae* nor *Manjarrez* are factually identical to the present case,[10] both suggest Officer Devos's circumstances—including working alone on a sparsely travelled street and having to turn his back to Mr. Garcia—support reasonable suspicion.

4. **Other Factors: Nervousness and Drug Use**

Officer Devos also cited Mr. Garcia's nervous behavior and his knowledge of Mr. Garcia's drug use history as contributing to his decision to pat Mr. Garcia down. Nervous behavior[11] and drug use history[12] may be relevant to reasonable suspicion, but we consider both as having minimal impact on the analysis here.

---

[10] Unlike either *McRae* or *Manjarrez*, this case does not involve the consensual search of a vehicle. The reasonable suspicion analyses in both *McRae* and *Manjarrez*, however, did not turn on whether the search was consensual, but instead on the officers' concern for their own safety, including having to turn their backs to defendants to conduct the search.

[11] The cases analyzing an individual's nervous behavior to determine reasonable suspicion highlight a tension between deferring to an officer's ability to detect suspicious behavior and discounting nervous behavior because "everyone gets nervous when stopped by a police officer." *United States v. Ludwig*, 641 F.3d 1243, 1249 (10th Cir. 2011); *see also United States v. Kitchell*, 653 F.3d 1206, 1220 (10th Cir. 2011) ("[U]nless an individual's display of nervousness is unusually severe or persistent, or accompanied by other, more probative grounds for reasonable suspicion, it is of limited significance in determining whether reasonable suspicion exists." (quotations omitted)).

5. **Totality of the Circumstances**

The totality of the circumstances includes Officer Devos's knowledge, the conditions under which he was working, and his concern for his own safety. *See McRae*, 81 F.3d at 1536.

By arresting the vehicle's driver and following Police Department protocol to perform the mandatory vehicle inventory, Officer Devos needed to deal with the vehicle's passenger, Mr. Garcia. Officer Devos knew Mr. Garcia (1) previously sought to evade arrest, took a combative stance when escape was not feasible, and had to be tased; and he knew Mr. Garcia (2) had a violent criminal past, which included an armed robbery.

In addition to this knowledge, Officer Devos needed to conduct an inventory search of the Hyundai after sundown without other officer support on an isolated road with his back turned to Mr. Garcia. In the two Tenth Circuit cases that have considered

_____

[12] As the district court concluded, Officer Devos's knowledge of Mr. Garcia's drug use was a minor factor. In cases where this court has found a defendant's drug involvement sufficient to justify a pat down, the defendant had a history of trafficking drugs. The nexus between drug trafficking and carrying a weapon gave the officer reasonable suspicion that the defendant might be armed and dangerous. *See Garcia*, 459 F.3d at 1064 (stating that "[n]umerous other cases lend support to the proposition that an individual's involvement with drug transactions or distribution can support reasonable suspicion to frisk that individual for weapons" and citing to several cases).

Officer Devos had knowledge only of Mr. Garcia's drug use. Although it may have been reasonable for Officer Devos to fear Mr. Garcia's using a syringe as a weapon, the district court did not decide on this ground, and we conclude the other circumstances surrounding the pat down suffice to support a conclusion of reasonable suspicion.

an officer's having to turn his or her back to a defendant, we required little beyond this concern to support the officer's reasonable suspicion. *See McRae*, 81 F.3d at 1536; *Manjarrez*, 348 F.3d at 887.

Based on the totality of the circumstances, we conclude Officer Devos had reasonable suspicion sufficient under the Fourth Amendment to pat down Mr. Garcia.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Mr. Garcia's motion to suppress.

United States v. Garcia, No. 13-2155

**EBEL**, J., dissenting

I agree with the majority's conclusion that Officer Devos reasonably believed that Mr. Garcia was dangerous given his recent encounter with Mr. Garcia, but I respectfully dissent from the court's holding that a Terry search is warranted here because no credible evidence exists to support Officer Devos's belief that Mr. Garcia was armed at the time of the stop. Supreme Court precedent requires an officer conducting a pat down to have a reasonable suspicion that the suspect was "armed <u>and</u> dangerous." That standard was not satisfied here, and the district court improperly denied Mr. Garcia's motion to suppress. I would reverse.

\*

In <u>Terry v. Ohio</u>, the Supreme Court held that if an officer has reasonable suspicion that a suspect is "armed and dangerous," the officer may conduct "a reasonable search for weapons for the protection of the police officer" without violating the Fourth Amendment. 392 U.S. 1, 27 (1968). The standard "armed and dangerous" is phased in the conjunctive, and thus requires both elements: that the suspect is armed, and is also dangerous. I am compelled to respect the Supreme Court's plain language, our circuit's binding precedent, and the policy underlying this conjunctive requirement, all of which points to the conclusion that a <u>Terry</u> search is not justified here.

I. <u>Plain Language of the Terry Test</u>

The word "and" in the test, "armed and <u>dangerous</u>" is to be construed in its plain-meaning conjunctive sense unless context specifies otherwise. <u>Crooks v. Harrelson</u>, 282 U.S. 55, 58 (1930) (holding the word "and" in its "ordinary sense" is a conjunctive word, requiring "not one or the other, but both <u>see also</u> <u>e.g.</u>, <u>City of Rome v. U. S.</u>, 446 U.S. 156, 172 (1980) <u>abrogated on other grounds by</u> <u>Shelby Cnty., Ala. v. Holder</u>, 133 S. Ct. 2612 (2013) (holding that by using "and" to describe "the elements of discriminatory purpose and effect in the conjunctive, Congress plainly intended that a voting practice not be precleared unless *both* discriminatory purpose and effect are absent" (emphasis in original)); <u>Qwest Commc'ns Int'l, Inc. v. F.C.C.</u>, 398 F.3d 1222, 1236 (10th Cir. 2005) ("The use of the conjunctive 'and' in the phrase 'preserve and advance universal service,' [and in the phrase] 'preservation and advancement of universal service,' clearly indicates that the Commission cannot satisfy the statutory mandate by simply doing one or the other."); <u>Am. Bankers Ins. Grp. v. United States</u>, 408 F.3d 1328, 1332 (11th Cir. 2005) ("[U]nless the context dictates otherwise, the word 'and' is presumed to be used in its ordinary sense, that is, conjunctively."); <u>OfficeMax, Inc. v. United States</u>, 428 F.3d 583, 589 (6th Cir. 2005) ("[T]he Supreme Court has said that 'and' presumptively should be read in its 'ordinary' conjunctive sense unless the 'context' in which the term is used or "other provisions of the statute" dictate a contrary interpretation.").

II. <u>Tenth Circuit Precedent</u>

Tenth Circuit precedent compels the conclusion that the phrase "armed and dangerous" requires an officer to have a reasonable suspicion of both elements. In <u>United States v. Rice</u>, for example, this court held:

*Reasonable Suspicion for the Pat–Down Search.* A pat-down search, however, requires additional suspicion that the suspect may be armed and dangerous. Although Officer Weakley could remove Rice from the car as a part of a routine traffic stop, he could not perform a pat-down search for weapons unless he reasonably suspected that Rice might be carrying one.

483 F.3d 1079, 1084 (10th Cir. 2007). More recently, in <u>United States v. House</u>, we again affirmed this conjunctive standard, holding that "before an officer effectuates a limited frisk for weapons . . . the officer must have a reasonable belief that the suspect is *both* (1) armed, and (2) dangerous." 463 F. App'x 783, 788 (10th Cir. 2012) (unpublished decision) (emphasis in original); <u>see also</u> <u>United States v. Riney</u>, 742 F.3d 785, 788 (7th Cir. 2014) (citing <u>Terry,</u> 392 U.S. at 27) ("If the officer has an articulable suspicion that the person stopped is both armed and dangerous, the officer may conduct a pat-down search to determine whether the person is carrying a weapon.").

III. <u>Policy behind the Armed and Dangerous Test</u>

Finally, <u>Terry</u>'s requirement that the suspect be armed <u>and</u> dangerous makes sense as a practical matter. If an officer does not reasonably believe the suspect is armed, there would be no reason for the officer to engage in a <u>Terry</u> pat down because the

3

officer would have no legitimate fear of a concealed weapon that could be used to harm. Terry itself only allowed "a reasonable search for weapons for the protection of the police officer," 392 U.S. at 27, and while an officer could face danger even were the suspect not armed, the "narrowly drawn authority" to search for weapons involved in a pat down would do little for the officer unless he had a reasonable belief that the suspect was presently armed. Id.

Admittedly, this court has concluded that officers may reasonably believe that a suspect is armed under a wide variety of circumstances, including when:

1) A suspect's history suggests that the suspect is likely to be armed. United States v. Dennison, 410 F.3d 1203, 1208 (10th Cir. 2005);

2) The nature of the ongoing crime observed suggests that the suspect is armed. United States v. Garcia, 459 F.3d 1059, 1064 (10th Cir. 2006) (holding that "a connection with drug transactions can support a reasonable suspicion that a suspect is armed and dangerous");

3) A bulge in the suspect's clothing suggests the presence of a weapon. United States v. Chavez, 812 F.2d 1295, 1302 (10th Cir. 1987);

4) The suspect is stopped in a high-crime area or at an unusual time of night, suggesting that the suspect may be there to commit a crime and may be carrying a weapon. Rice, 483 F.3d at 1082.

However, a review of the factors relied on by the district court here shows that none of these circumstances—nor any other facts that would give Officer Devos

4

reasonable suspicion that Mr. Garcia was armed—were present here. This is not to suggest that any one of the above circumstances, standing alone, would always be sufficient, as in many situations it would not be. But having no persuasive evidence that the suspect is armed is certainly insufficient to establish the "armed" prong of the Terry search.

Here, the district court first relied upon the fact that Officer Devos knew that Mr. Garcia was a convicted felon who had participated in an armed robbery in 2003, nine years before Mr. Devos stopped him in this case. Of course, standing alone, Officer Devos's knowledge that Garcia had carried out an armed robbery nine years before the incident does not support a reasonable suspicion that he was armed and dangerous at the time of the stop. Although a prior history of violent crime can contribute to the reasonable suspicion analysis, see Rice, 483 F.3d at 1085, the great extent of time between the stop in 2012 and Mr. Garcia's participation in that robbery make this evidence exceedingly weak. Had Mr. Garcia been stopped for suspicion that he was currently in the midst of a robbery attempt, his prior conviction for using a weapon in a robbery might be sufficient to establish the armed prong, at least if the earlier robbery was not too remote in time or circumstance. However, Officer Devos here did not allege that Mr. Garcia appeared to be on his way to a robbery, so his generalized recollection of Mr. Garcia's ancient and factually discrete history contributes almost nothing to the reasonable suspicion analysis here.

Further, although the government makes much of the confrontation between Officer Devos and Mr. Garcia two weeks before the stop, that interaction diminishes the probative value of Mr. Garcia's nine-year-old robbery conviction. In the recent confrontation between Officer Devos and Mr. Garcia, Mr. Garcia had been at his house (where he may have able to pick up some kind of weapon if he had wanted) before confronting Officer Devos. Yet Mr. Garcia did not have or use a weapon during that confrontation. That Mr. Garcia did not use a weapon when he arguably had the chance to do so undermines the government's use of Mr. Garcia's history as support for Officer Devos's reasonable suspicion.

Officer Devos also noted that during the stop, Mr. Garcia was fidgeting nervously with his hands, in a way that suggested he was nervous and trying to calm his nerves. "[W]e have emphasized—repeatedly—that nervousness is of limited significance in determining reasonable suspicion." United States v. Ludwig, 641 F.3d 1243, 1249-50 (10th Cir. 2011). Although Officer Devos contends that he thought that Mr. Garcia's fidgeting indicated that Mr. Garcia might be trying to hide either drugs or a weapon, his uncertainty as to whether he suspected drugs or a weapon deflates that suspicion. Officer Devos had no independent present evidence that would lead him to believe that Mr. Garcia was not simply—and predictably—nervous. Further, attempting to hide something in the car would seem contrary to Mr. Garcia having something on his person when searched later. At bottom, Officer Devos's testimony on this aspect of the stop is "based

6

on nothing more substantial than inarticulate hunches, a result th[e] Court has consistently refused to sanction." Terry, 392 U.S. at 22.

The district court also concluded that Officer Devos had reasonable suspicion that Mr. Garcia was armed and dangerous in part because "Officer Devos made this traffic stop while he was alone, at night, on a road that does not have much traffic." ROA at 95. Although this court recognizes that when police officers initiate stops very late at night or in high crime areas, it can and does contribute to reasonable suspicion that a suspect may be armed to carry out a crime, Rice, 483 F.3d at 1084, none of these circumstances existed here. A driver traveling around dinner time on a street, without much traffic, outside of high crime areas should be under no more suspicion of possessing a weapon than an average citizen. An officer stopping a car in a light-traffic area at 7:45 p.m., even if it has recently become dark, may not call on these dinner-time circumstances, and the district court was wrong to include these circumstances as additional evidence on top of the magistrate judge's report.

The plain language of the Supreme Court's decision in Terry, this court's precedent, and the underlying policy all require an officer performing a pat down to have a reasonable suspicion that the suspect was not only dangerous, but also armed. The record is devoid of evidence that supported a reasonable suspicion that Mr. Garcia was armed. Mr. Garcia's motion to suppress should be granted.

I respectfully dissent.

7