**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 13, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GEORGE H. BEAMON, JR.,

Defendant - Appellant.

No. 13-2211
(D. New Mexico)
(D.C. No. 1:12-CR-02051-MV-1)

**ORDER AND JUDGMENT**[*]

Before **MATHESON, EBEL** and **McHUGH,** Circuit Judges.

The defendant, George H. Beamon, Jr., was convicted of possession of cocaine

with intent to distribute. He now appeals the district court's order denying his motion to

suppress, thereby raising the issue of whether an unsuccessful attempt to restrain a fleeing

suspect, punctuated by a brief scuffle with a law enforcement officer, constitutes a

seizure for Fourth Amendment purposes. Exercising jurisdiction under 28 U.S.C. § 1291,

we hold that it does not and affirm the district court's decision.

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 32.1.

# I.   BACKGROUND

## A.   *Factual History*[1]

Mr. Beamon's conviction was based on evidence uncovered during a routine drug interdiction operation on an Amtrak train. He and a male companion were traveling from San Bernardino, California, to Kansas City, Missouri. While the train was stopped in Albuquerque, New Mexico, DEA Agent Kevin Small and Albuquerque Police Department Task Force Officer Jeannette Tate boarded in order to speak to passengers and look for signs of drug trafficking. Officer Tate approached Mr. Beamon and his traveling companion on the upper level of the double-decker train. She identified herself and asked to speak with the men. When both agreed, Officer Tate asked some preliminary questions and then requested permission to search Mr. Beamon's backpack. In response, Mr. Beamon reached into the backpack a handful of times, despite Officer Tate's request that he desist. Mr. Beamon refused Officer Tate's requests to search the backpack. Instead, Mr. Beamon picked up the backpack and attempted to leave.

---

[1] These facts are taken from the district court's Memorandum Opinion and Order denying Mr. Beamon's motion to suppress. *United States v. Beamon*, No. 12-CR-2051-MV (D.N.M. March 11, 2013), ECF No. 39. We accept the district court's findings of fact as true unless clearly erroneous. *United States v. Garcia*, 751 F.3d 1139, 1142 (10th Cir. 2014).

During Mr. Beamon's conversation with Officer Tate, Agent Small had positioned himself behind the two and was standing in the train's aisle, near the stairwell. When Mr. Beamon tried to pass, Agent Small grabbed him.[2] Both men fell down the stairwell, landing next to each other at the base of the stairs exiting the train. During the scuffle, the strap of Mr. Beamon's backpack became wrapped around Agent Small's leg. Mr. Beamon grabbed a vacuum-sealed envelope from the backpack and continued to flee. Agent Small then extricated himself from the backpack, drew his weapon, and ordered Mr. Beamon to the ground on the train station platform. Mr. Beamon complied and Agent Small placed him under arrest and confiscated the envelope. Subsequent testing confirmed the envelope contained cocaine.

### B.    *Procedural History*

The Government charged Mr. Beamon with possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Before trial, Mr. Beamon moved to suppress evidence of the cocaine found in the envelope, on the ground that Agent Small obtained it in violation of the Fourth Amendment by seizing Mr. Beamon without reasonable suspicion in the aisle of the train. The district court denied Mr.

---

[2] There is conflicting evidence on this point. Below, the government offered testimony that Mr. Beamon initiated the physical contact with Agent Small, not the other way around. The district court assumed without deciding that Agent Small initiated the contact by grabbing Mr. Beamon. Because we can affirm under either version of the facts, we have also assumed for purposes of analysis that Mr. Beamon's version on this point is accurate.

Beamon's motion to suppress, finding that Mr. Beamon was not seized until he was forced to the ground at gunpoint on the train platform, at which point Agent Small had probable cause to arrest Mr. Beamon.

After the trial court ruled that the cocaine could be admitted, Mr. Beamon entered a conditional guilty plea, reserving his right to appeal the district court's suppression ruling. The district court sentenced Mr. Beamon to twelve months and one day in prison. He now appeals the denial of his motion to suppress.

## II.  DISCUSSION

On appeal, Mr. Beamon advances two distinct arguments for why the cocaine evidence should have been suppressed. First, he reasserts the argument raised in the district court that a seizure of his person occurred when Agent Small grabbed him in the aisle of the upper deck of the train. Second, and for the first time on appeal, Mr. Beamon asserts Agent Small seized his backpack when it became tangled on Agent Small's leg during their scuffle. According to Mr. Beamon, Agent Small lacked reasonable suspicion to seize either his person or his backpack, and any evidence discovered as a result of the seizures must be excluded as being obtained in violation of his Fourth Amendment rights.

We reject Mr. Beamon's first argument because he was not seized until Agent Small held him at gunpoint on the train platform. We agree with the district court that this seizure was supported by probable cause and therefore did not unreasonably interfere with Mr. Beamon's Fourth Amendment rights. With respect to Mr. Beamon's second

argument on appeal, we refuse to consider it because Mr. Beamon did not raise a separate argument in the district court concerning the seizure of his backpack.

## A. *Standard of Review*

"In reviewing a district court's denial of a motion to suppress, we review factual findings for clear error, viewing the evidence in the light most favorable to the Government." *United States v. Garcia*, 751 F.3d 1139, 1142 (10th Cir. 2014). We "review de novo the ultimate determination of reasonableness under the Fourth Amendment." *United States v. Mosley*, 743 F.3d 1317, 1322 (10th Cir. 2014). "[T]he key question here—when the seizure occurred—is a legal one that we must examine de novo." *United States v. Salazar*, 609 F.3d 1059, 1064 (10th Cir. 2010).

## B. *Legal Background*

Mr. Beamon is correct that evidence obtained in violation of a suspect's Fourth Amendment rights will be suppressed in some instances. *See United States v. Christy*, 739 F.3d 534, 540 (10th Cir. 2014). *But see Davis v. United States*, ___ U.S. ___, 131 S. Ct. 2419, 2426 (2011) (discussing the good faith exception to the exclusionary rule). The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. In turn, the reasonableness of a seizure is dependent on the nature of and justification for the encounter with law enforcement.

The Supreme Court has recognized three categories of police-citizen encounters: consensual encounters, investigative stops, and arrests. *United States v. Jones*, 701 F.3d 1300, 1312 (10th Cir. 2012); *see Florida v. Bostick*, 501 U.S. 429, 436 (1991) (consensual encounters); *Terry v. Ohio*, 392 U.S. 1, 25–29 (1968) (investigative stops); *Kaupp v. Texas*, 538 U.S. 626, 630 (2003) (arrests). An encounter with law enforcement is consensual when it is voluntary in the sense that a reasonable person would be aware that he is entitled to terminate the encounter at any time. *Bostick*, 501 U.S. at 436. Because "[c]onsensual encounters are not seizures within the meaning of the Fourth Amendment," they need not be justified "by [any] suspicion of criminal wrongdoing." *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000); *accord Bostick*, 501 U.S. at 434–35.

In contrast, investigative stops are seizures and must be justified by "a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Guardado*, 699 F.3d 1220, 1222 (10th Cir. 2012). Although a suspect may be detained without his consent during an investigative stop, the duration of the stop may not extend beyond the time necessary for the officer to investigate and confirm or dispel his suspicions. *See United States v. De La Cruz*, 703 F.3d 1193, 1196–98 (10th Cir. 2013). Arrests are seizures which are significantly more intrusive or lengthy than an investigative stop and "require that a reasonable officer would have probable cause to believe the arrestee has committed a crime." *United States v. Villagrana-Flores*, 467 F.3d 1269, 1273 (10th Cir. 2006).

## C. *Analysis*

To determine whether Mr. Beamon's Fourth Amendment rights were violated, "[o]ur first task is to establish at what point in this encounter the Fourth Amendment becomes relevant." *Terry*, 392 U.S. at 16. If the Fourth Amendment is implicated, we must determine the nature of the encounter and whether it was justified by either reasonable suspicion or probable cause "at that time—not a moment before." *Guardado*, 699 F.3d at 1223.

**1. The Fourth Amendment first became relevant when Agent Small seized Mr. Beamon by holding him at gunpoint on the train platform.**

Mr. Beamon's encounter with law enforcement began when Officer Tate approached him, identified herself, and obtained his permission to ask some questions. There is no dispute that this was a consensual encounter that did not implicate the Fourth Amendment.

When Mr. Beamon decided to terminate the encounter with Officer Tate by taking his backpack and leaving, Agent Small attempted to prevent Mr. Beamon from doing so by grabbing him. If this was a seizure, Agent Small was required to have sufficient justification for the intrusion. If it was not a seizure, the requirements of the Fourth Amendment are not implicated. For the reasons we now explain, we agree with the district court that Agent Small did not seize Mr. Beamon at that time.

A Fourth Amendment seizure occurs when an officer either "by means of physical force or show of authority" restrains a citizen's liberty. *Terry*, 392 U.S. at 19 n.16. But

until a citizen's liberty is actually restrained, there is no seizure. In *California v. Hodari D.*, 499 U.S. 621 (1991), the Supreme Court held that a show of authority with which the suspect does not comply and which consequently does not restrain the suspect is merely an attempted seizure and does not implicate the Fourth Amendment. *Id.* at 628–29. There, the Court held that a police officer's pursuit, even if treated as a show of authority enjoining the suspect to halt, was not a seizure warranting the exclusion of cocaine the suspect abandoned while fleeing, because the suspect did not in fact stop. *Id.* at 629. The Supreme Court held the suspect was not seized until he was tackled by the officer and, therefore, the cocaine abandoned during the suspect's attempted escape was not obtained in violation of the Fourth Amendment. *Id.*

We extended the reasoning of *Hodari D.* to situations in which an officer attempts unsuccessfully to restrain a suspect by physical force in *Brooks v. Gaenzle*, 614 F.3d 1213 (10th Cir. 2010). In *Brooks*, an officer shot a fleeing suspect but the suspect managed to escape and evade capture for three days. *Id.* at 1215. After the suspect was caught and convicted, he brought a 42 U.S.C. § 1983 action, alleging the officer violated his Fourth Amendment right against unreasonable seizure by using excessive force—shooting him. *Id.* at 1214–15. We affirmed the district court's summary judgment in favor of the officer, explaining "the mere use of physical force or [a] show of authority alone, without termination of movement or submission" is not a seizure. *Id.* at 1221–22. Because the gunshot did not stop the suspect's escape or terminate his movement, we held there was no seizure that would implicate the Fourth Amendment. *Id.* at 1223–24; *accord United States v. Bradley*, 196 F.3d 762, 768 (7th Cir. 1999) ("First, there must be

-8-

either a show of authority or a use of force; and second, the show of authority or use of force must have caused the fleeing individual to stop attempting to escape."); *see also Brendlin v. California*, 551 U.S. 249, 254 (2007) (A person is seized only "when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement." (internal quotation marks omitted)); *Mosley*, 743 F.3d at 1325 ("[A] fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away." (quoting *Brendlin*, 551 U.S. at 262)). The same result is appropriate here.

Agent Small exercised physical force when he grabbed Mr. Beamon in the aisle of the upper-deck of the train. However, Mr. Beamon did not submit to Agent Small's show of force and his movement was not terminated. Mr. Beamon instead resisted, and during the resulting scuffle he and Agent Small fell down the stairs. At that point, Agent Small's exercise of physical force was only an attempted seizure and therefore did not implicate the Fourth Amendment. *Cf. Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 n.7 (1998) ("Attempted seizures of a person are beyond the scope of the Fourth Amendment.").

Upon tumbling down the stairs, Mr. Beamon got up, removed the vacuum-sealed envelope from his backpack, and continued to flee. Although Agent Small's grab and the resulting tumble slowed Mr. Beamon's flight, it did not stop him. Accordingly, it was not a seizure. *See Brooks*, 614 F.3d at 1224–25 (rejecting the suspect's argument that the officer's gunshot was a seizure because it slowed his escape); *Guardado*, 699 F.3d at 1222–23 (holding that a suspect fleeing on foot was only seized when tackled by an officer, not when the officer's partner cut him off by driving his car into the suspect's

path). Although the Tenth Circuit has not previously addressed this precise issue, our conclusion is supported by cases from other jurisdictions that agree there is no Fourth Amendment seizure when officers apply physical force in a brief struggle, if the force is insufficient to physically subdue the suspect. *See Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 481–85 (7th Cir. 2011) (holding a suspect was not seized when an officer grabbed his wrist in an unsuccessful attempt to handcuff him, but only when the officer subdued him with pepper spray and arrested him); *United States v. Hernandez*, 27 F.3d 1403, 1406–07 (9th Cir. 1994) (holding a suspect was not seized during a struggle instigated when an officer grabbed him because the suspect escaped and ran away); *Henson v. United States*, 55 A.3d 859, 862–67 (D.C. 2012) (applying *Brooks v. Gaenzle* and holding a suspect was not seized when an officer grabbed his jacket because he was able to slip out of the jacket and run, but that he was seized when twenty or thirty yards away he fell on the ice and the officers acquired "physical control" of him).

To be sure, even a momentary stop is a Fourth Amendment seizure. *United States v. Morgan*, 936 F.2d 1561, 1567 (10th Cir. 1991). But a momentary seizure requires some brief submission to police authority or termination of movement, neither of which occurred here until Mr. Beamon surrendered to Agent Small on the train platform. Mr. Beamon does not contest that by then, Agent Small had probable cause to arrest based on the totality of Mr. Beamon's conduct, including Mr. Beamon's removal of the vacuum-sealed package containing what appeared to be cocaine from the backpack.

-10-

**2. Mr. Beamon did not raise a separate argument in the district court based on the seizure of his backpack.**

In the district court, Mr. Beamon argued that Agent Small seized his person and effects when Agent Small first grabbed Mr. Beamon in the aisle of the train. He did not assert, either in his oral argument or written submissions below, that his backpack was separately and illegally seized when it became wrapped around Agent Small's leg. Because Mr. Beamon did not alert the district court to the separate argument relating to detention of his backpack during the struggle with Agent Small, that is not preserved for appeal and we do not consider it further. *See Ecclestes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1141 (10th Cir. 2007) ("This [c]ourt will not consider a new theory advanced for the first time as an appellate issue, even a theory that is related to one that was presented to the district court.").[3]

### III. CONCLUSION

Mr. Beamon was not seized when Agent Small grabbed him on the upper-deck of the train, because Mr. Beamon was not actually detained. Agent Small's attempt to seize Mr. Beamon was not successful until Agent Small ordered Mr. Beamon to the ground at gunpoint on the train station platform and Mr. Beamon complied. By that time, Agent Small had probable cause to arrest Mr. Beamon for drug trafficking. Mr. Beamon's

---

[3] Nor was Mr. Beamon's cursory reference, in his motion to suppress, to suppression of any and all evidence resulting from any and all illegal searches and seizures enough to preserve the issue. *United States v. Gantt*, 679 F.3d 1240, 1248 (10th Cir. 2012) ("An unelaborated snippet cannot preserve an issue for appeal.").

separate argument claiming that Agent Small unlawfully seized the backpack was not preserved.

For the foregoing reasons, we **AFFIRM** the district court's denial of Mr. Beamon's motion to suppress.

ENTERED FOR THE COURT


Carolyn B. McHugh
Circuit Judge