**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRIAN FORD FAGER,

    Defendant - Appellant.

No. 15-3104

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 5:14-CR-40053-EFM-1)**
_____

Andrew J. McGowan, Assistant Federal Public Defender (Melody Brannon, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Topeka, Kansas, for Defendant-Appellant.

James A. Brown, Assistant United States Attorney (Barry R. Grissom, United States Attorney, with him on the brief), Office of the United States Attorney, Topeka, Kansas, for Plaintiff-Appellee.

_____

Before **HOLMES**, **BALDOCK**, and **MATHESON**, Circuit Judges.
_____

**BALDOCK**, Circuit Judge.
_____

Defendant Brian Ford Fager appeals the denial of his Motion to Suppress a firearm police officers discovered on his person during a roadside frisk. We must decide whether the officers' concerns for their own safety gave them the requisite

reasonable suspicion to frisk Defendant. We hold that these concerns sufficiently justified the frisk under the totality of the circumstances and affirm.

I.

On February 10, 2014, Deputy Justin Dobler of the Topeka Police Department stopped Defendant's car around 8:00 p.m. for a turn signal violation near an apartment complex in a high-crime area of Topeka. Deputy Dobler approached the passenger side of the vehicle. Two people were in the car: Defendant was driving, and Gregory Walls was in the front passenger's seat. Deputy Dobler noticed Defendant's eyes were watery, his speech was soft, and an unopened beer can sat in the center console of the vehicle—signs that indicated Defendant may have been impaired. Furthermore, Walls continually leaned forward in a way that made Deputy Dobler think Walls was trying to obstruct his view of Defendant, an action which Deputy Dobler found suspicious.

Deputy Dobler asked for and received both Defendant's and Walls's identifications. He then returned to his patrol vehicle and ran the identifications for outstanding warrants. He discovered Walls had several outstanding warrants for his arrest, but he was not informed of the grounds for the warrants. Deputy Dobler called for a backup officer at this point, and once the backup officer arrived, they approached Defendant's vehicle and asked Defendant to step out.

Deputy Dobler spoke with Defendant at the back of Defendant's vehicle and asked if he had been drinking or doing drugs that evening. Defendant answered that he had not. Although Deputy Dobler had discovered Defendant had at least one prior

DUI, he determined Defendant was not presently impaired in any way. Deputy Dobler later testified that at this point Defendant had not done anything to cause him any fear.

After a few more questions, Deputy Dobler asked Defendant if he could search Defendant's car. Defendant responded that he could. Because it was cold, Deputy Dobler gave Defendant the option to sit in his patrol vehicle while the search was ongoing instead of standing outside. Defendant took Deputy Dobler up on this offer and chose to sit inside the patrol vehicle, which was parked only a few feet away from Defendant's car.

Deputy Dobler then explained to Defendant, "For our safety, I want to pat you down real quick to make sure you don't got any weapons or anything on you at all." DVD of Traffic Stop 19:52:34. Defendant did not verbally respond but positioned himself for a pat-down. Deputy Dobler explained to Defendant that he was not being arrested.

Deputy Dobler and the backup officer began the pat-down search of Defendant, and a third officer arrived at the scene during the course of the pat-down. Deputy Dobler eventually discovered the firearm at issue in Defendant's waistband. The officers then arrested Defendant.

Thereafter, a grand jury charged Defendant in a Sealed Indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Defendant filed a Motion to Suppress the firearm, arguing that the pat-down search was unlawful. At an evidentiary hearing on this Motion, Deputy Dobler testified that the pat-down was

3

justified for the following reasons:

> With there only being two officers at that time, before our third officer showed up, if he's going to consent to search the vehicle and then go in a patrol car, make sure he's got no weapons on him, due to the fact that we're going to be taking—myself was going to be completely looking away from both of those people while searching the vehicle, and the last thing we want to have happen is an attack to happen on another deputy and then draw the third officer away from the second occupant to help him out. It would just be a bad situation.

Tr. of Mot. to Suppress Hr'g 20.

The district court eventually determined the frisk was lawful and denied the Motion to Suppress. The court based this ruling solely on its conclusion that the officers had reasonable suspicion to support the frisk under this Court's precedent from *United States v. McRae*, 81 F.3d 1528 (10th Cir. 1996), and *United States v. Manjarrez*, 348 F.3d 881 (10th Cir. 2003). As a result, Defendant entered a conditional guilty plea that allowed him to appeal the district court's denial of the Motion to Suppress.[1] He now exercises that right and timely appeals the denial. We have jurisdiction pursuant to 28 U.S.C. § 1291.

II.

"In reviewing a district court's denial of a motion to suppress, we view the evidence in the light most favorable to the Government and accept the district court's factual findings unless clearly erroneous." *United States v. Gilmore*, 776 F.3d 765, 768 (10th Cir. 2015). "We review de novo the ultimate determination of the

---

[1] The district court imposed a sentence of six months' custody and six months' home confinement on Defendant pursuant to the conditional guilty plea. Defendant has already served his time in prison and is now serving his six month period of home detention.

4

reasonableness of a search . . . under the Fourth Amendment." *Id.* "But [w]e can affirm a lower court's ruling on any grounds adequately supported by the record, even grounds not relied upon by the district court." *United States v. Mabry*, 728 F.3d 1163, 1166 (10th Cir. 2013) (alteration in original) (quoting *Elwell v. Byers*, 699 F.3d 1208, 1213 (10th Cir. 2012)) (internal quotation marks omitted).

III.

The Fourth Amendment governs pat-down searches of an individual for weapons, and as a result the pat-down is constitutionally valid only if it is reasonable. U.S. Const. amend. IV; *Terry v. Ohio*, 392 U.S. 1, 19 (1968). A reasonable pat-down occurs when an officer has "reasonable suspicion that a person is armed and dangerous." *United States v. Rice*, 483 F.3d 1079, 1082 (10th Cir. 2007); *see also Terry*, 392 U.S. at 27. The justification for this requirement is primarily grounded in concerns for officer safety and the safety of bystanders:

> [T]here must be a narrowly drawn authority to permit a reasonable search for weapons *for the protection of the police officer*, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; *the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger*.

*Terry*, 392 U.S. at 27 (emphases added); *see also United States v. Garcia*, 751 F.3d 1139, 1142 (10th Cir. 2014).

Given this understandable concern for officer safety, we have upheld pat-down searches "[e]ven when an officer had limited 'specific information leading him to

5

believe that [an individual] was armed or dangerous' and no knowledge of the individual's having possessed a weapon." *Garcia*, 751 F.3d at 1142 (second alteration in original) (quoting *McRae*, 81 F.3d at 1536). In *United States v. McRae*, for instance,

> an officer frisked Mr. McRae after obtaining consent to search Mr. McRae's vehicle. Th[is] court concluded the officer had reasonable suspicion to frisk Mr. McRae because (1) "a search of the car might compel [the officer] to turn his back on Mr. McRae, and the two men were on an isolated stretch of highway"; (2) the officer received information that Mr. McRae ha[d] a criminal history and should be approached with "extreme caution"; and (3) Mr. McRae put on his jacket before exiting his vehicle, and "a jacket is a likely place in which to store a weapon."

*Id.* at 1146 (citations omitted) (quoting *McRae*, 81 F.3d at 1531–32, 1536). And in

*United States v. Manjarrez*,

> an officer frisked Mr. Manjarrez after obtaining consent to search Mr. Manjarrez's vehicle. Unlike the officer in *McRae,* however, the officer in *Manjarrez* had no knowledge of any previous criminal history, and Mr. Manjarrez was not acting suspiciously. Th[is] court concluded that the officer "could not reasonably be expected to leave Defendant in his patrol car, turn his back on Defendant, insert his head into Defendant's car, and search the car without first checking Defendant for weapons."

*Id.* (citations omitted) (quoting *Manjarrez*, 348 F.3d at 884, 887). These two cases taken together have led us to reason that when an officer must "turn his or her back to a defendant, we require[] little beyond this concern to support the officer's reasonable suspicion." *Id.* at 1147.

Nonetheless, we reaffirmed in *United States v. Garcia*, 751 F.3d 1139 (10th Cir. 2014), that a reasonable suspicion analysis is still first and foremost a multi-

factor test based on the totality of the circumstances. *Id.* at 1144–46; *see also Rice*, 483 F.3d at 1083. In addition to the officer having to turn his or her back on the defendant, other factors that can influence an officer's reasonable suspicion include (but are not limited to) the time of day when and the place where the pat-down occurred, any previous encounters the officer had with the defendant, the defendant's criminal history, the defendant's nervousness,[2] and the defendant's history of drug use.[3] *Garcia*, 751 F.3d at 1144–47. Moreover, when a defendant is in a "relatively small automobile" with a passenger who has outstanding arrest warrants and "either individual could access weapons inside the passenger compartment," we have held that an officer may "infer a common purpose or 'enterprise' between the two men and believe that [the defendant] knew of [the passenger's] arrest warrants and would want to conceal evidence of any wrongdoing." *United States v. Dennison*, 410 F.3d 1203, 1213 (10th Cir. 2005) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 304–05 (1999)). This "common purpose or enterprise" also bears on the reasonable suspicion analysis. *See id.*

---

[2] This factor is not particularly salient, however, for we have held that "nervousness is not entitled to significant weight when determining whether reasonable suspicion exists" unless the nervousness is "[e]xtreme and persistent." *United States v. Moore*, 795 F.3d 1224, 1230 (10th Cir. 2015) (alteration in original) (quoting *Courtney v. Okla. ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1224 (10th Cir. 2013) and *United States v. Simpson*, 609 F.3d 1140, 1148 (10th Cir. 2010)) (internal quotation marks omitted).

[3] A defendant's history of drug use is also not overly probative unless "the defendant [also] had a history of trafficking drugs," because there is a well-established "nexus between drug trafficking and carrying a weapon." *Garcia*, 751 F.3d at 1146 n.12.

When finally weighing the totality of the circumstances, we must be careful to "tak[e] into account an officer's *reasonable* inferences based on training, experience, and common sense," *Rice*, 483 F.3d at 1083 (emphasis added), and to that extent "we look at the objective facts, not the officer's state of mind" when "measuring the actions of a police officer under the Fourth Amendment," *United States v. Neff*, 300 F.3d 1217, 1222 (10th Cir. 2002). In the end, reasonable suspicion must meet only a "minimum level of objective justification." *Garcia*, 751 F.3d at 1143 (quoting *Rice*, 483 F.3d at 1083) (internal quotation marks omitted). This level "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

IV.

Defendant argues on appeal that the district court erred in utilizing this Court's decisions from *McRae* and *Manjarrez* to support its conclusion that Deputy Dobler had reasonable suspicion to pat him down. His argument on this front is two-fold. First, he claims the facts in *McRae* and *Manjarrez* are distinguishable from those in his case. Second, he contends the district court should not have been able to rely on *McRae* and *Manjarrez* in the first place because this Court incorrectly decided them, and to that extent he asks us to overrule these two cases. Because a discussion of why *McRae* and *Manjarrez* were correctly decided helps frame why these cases are not factually distinguishable, we begin by evaluating his second argument.

8

A.

Defendant asserts *McRae* and *Manjarrez* were incorrectly decided because they suggest that "when an officer is given consent to search a car[,] it automatically allows the officer to frisk the occupants of the car" even if he has no suspicion the occupants are armed or dangerous. Appellant's Br. 57. He therefore asks us to overrule our holdings in these cases and re-establish the requirement that an officer must reasonably suspect an individual is armed and dangerous before he can frisk the individual.

Contrary to Defendant's contention, however, *McRae* and *Manjarrez* are not exceptions to the armed and dangerous requirement but instead function as specific applications of how the armed and dangerous requirement plays out when an officer is in perilous circumstances and reasonably concerned for his own safety. More specifically, these two cases show "how an officer's suspicion that an individual is dangerous can affect that officer's suspicion that an individual is armed." *Garcia*, 751 F.3d at 1143 n.7. This approach explains why the officer in *McRae* could frisk the driver of the vehicle before searching his car: because the driver had a violent criminal history and the officer had to turn his back on this potentially dangerous man, the officer could reasonably *suspect* the driver of the vehicle was armed and frisk him for his own safety. The same was true for the officer in *Manjarrez*: he had to turn his back on the driver to perform a search of his vehicle, and given the dangerous nature of traffic stops to officers, he could reasonably *suspect* the driver was armed. *See United States v. Holt*, 264 F.3d 1215, 1223 (10th Cir. 2001) (en

9

banc) ("The terrifying truth is that officers face a very real risk of being assaulted with a dangerous weapon each time they stop a vehicle."), *overruling on other grounds recognized in United States v. Stewart*, 473 F.3d 1265, 1269 (10th Cir. 2007).

Furthermore, in *Garcia* we noted *McRae* and *Manjarrez* were cases that applied reasonable suspicion analyses. *See Garcia*, 751 F.3d at 1146 ("Although neither *McRae* nor *Manjarrez* are factually identical to the present case, both suggest Officer Devos's circumstances . . . *support reasonable suspicion*." (emphasis added)); *id.* at 1146 n.10 ("The *reasonable suspicion analyses* in both *McRae* and *Manjarrez* . . . did not turn on whether the search was consensual, but instead on the officers' concern for their own safety." (emphasis added)); *id.* at 1147 ("In the two Tenth Circuit cases that have considered an officer's having to turn his or her back to a defendant, we required little beyond this concern to support the officer's *reasonable suspicion*." (emphasis added)). These references from *Garcia* demonstrate Defendant is mistaken when he contends *McRae* and *Manjarrez* stand for the alternative proposition that an officer can automatically frisk the occupants of a car when the driver gives him consent to search the car. To be sure, these two cases "did not turn on whether the search was consensual, but instead on the officers' concern for their own safety, including having to turn their backs to defendants to conduct the search." *Id.* at 1146 n.10. It is possible to imagine a situation where an officer obtains consent from a driver to search his vehicle but could not reasonably be

concerned for his own safety, and therefore could not pat-down the driver.[4]

We consequently reject Defendant's invitation to overrule *McRae* and *Manjarrez*. These two cases are appropriate extensions of the rule that pat-downs and frisks are constitutional when an officer reasonably suspects an individual is armed and dangerous. We find no reason to deviate from them.[5]

## B.

Defendant's alternative argument that *McRae* and *Manjarrez* are factually distinguishable from his case ultimately boils down to the fact that *two* police officers

---

[4] For this very reason, we also reject Defendant's alternative suggestion that we establish a new, *Miranda*-like rule requiring an officer to give an individual notice that his consent to search his car means the officer has the authority to frisk him. As we described above, the frisk of Defendant "did not turn on whether the search was consensual, but instead on the officers' concern for their own safety." *Garcia*, 751 F.3d at 1146 n.10. An officer's ability to search a car does not *automatically* mean he has the authority to frisk the driver—he only has this authority if the circumstances objectively demonstrate that he is concerned for his own safety or the safety of others. Moreover, creating a rule like the one Defendant advocates would be a far cry from anything this Court has previously required when an officer must frisk an individual during a traffic stop. We decline the opportunity to impose another new requirement on law enforcement.

[5] Even if we wanted to overrule these cases, we do not have the power to do so "barring en banc reconsideration, a superseding contrary Supreme Court decision, or authorization of all currently active judges on the court." *United States v. Edward J.*, 224 F.3d 1216, 1220 (10th Cir. 2000). Defendant attempts to sidestep this principle by invoking a corollary rule that mandates "a panel should follow earlier, settled precedent over a subsequent deviation therefrom" "when faced with an intra-circuit conflict." *Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996). In essence, he tries to craft an intra-circuit conflict by relying on his characterization of the holdings from *McRae* and *Manjarrez* as deviations from our cases applying the holding in *Terry v. Ohio* that originally outlined the armed and dangerous requirement. *Terry*, 392 U.S. at 27. As we noted above*,* however, *McRae* and *Manjarrez* are not in conflict with the armed and dangerous requirement but instead shed light on how this Court interprets and applies it. Consequently, no intra-circuit conflict exists.

11

were present when Deputy Dobler received Defendant's consent to search his car. He claims the presence of this additional officer—a circumstance that did not exist in either *McRae* or *Manjarrez*—means the officers could not reasonably suspect Defendant was armed and dangerous, presumably because the additional officer would have vitiated any risk of danger Defendant presented while the search was ongoing and thereby eliminated any concerns the officers could have had for their own safety. He also contends that no other factors existed that could have ignited reasonable suspicion in the officers, especially since Deputy Dobler testified that Defendant had not done anything to cause him any fear during the stop.

But the presence of the backup officer did not entirely abate the danger that Defendant posed to the officers. Even though the backup officer undoubtedly could have supervised Defendant while Deputy Dobler searched the vehicle, this supervision may not have adequately curtailed any plan Defendant may have had to shoot one or both of the officers. Indeed, "[a]n officer in today's reality has an objective, reasonable basis to fear for his or her life" during traffic stops because "[r]esort to a loaded weapon is an increasingly plausible option for many such motorists to escape," especially when "the motorist or a passenger knows there are outstanding arrest warrants or current criminal activity that may be discovered during the course of the stop." *Holt*, 264 F.3d at 1223. As such, if Defendant harbored a desire to use his weapon against the officers, he may very well have used it regardless of whether the backup officer was keeping an eye on him so that he could evade any adverse consequences brought about by the search of his vehicle. This

12

conclusion is bolstered by the presence of passenger Gregory Walls, a man with several outstanding arrest warrants, who was still on the scene and posed a risk of danger himself. It is not out of the realm of reasonable possibility that Defendant and Walls could have mounted a joint attack against the officers.[6] While an officer's concern that two or more individuals could launch a coordinated attack on him may not be reasonable in many other types of encounters between law enforcement personnel and civilians, it is entirely reasonable in the context of traffic stops because

---

[6] Defendant claims the officers could have negated this risk by arresting Walls for his outstanding warrants before they began frisking Defendant. Arresting Walls would have physically restrained him and left him powerless, and Defendant therefore argues this delay "created an exigency to pat-down [Defendant]." Appellant's Br. 48. He consequently claims the pat-down was constitutionally invalid.

To be sure, a warrantless search may not be justified on the basis of exigent circumstances that the government creates. *Kentucky v. King*, 563 U.S. 452, 461 (2011); *United States v. Bonitz*, 826 F.2d 954, 957 (10th Cir. 1987). The officers here, however, did not encounter or create any exigency. As an initial matter, we have serious doubts that failing to arrest Walls sooner could even qualify as an exigent circumstance—the simple fact that he was a danger for reasonable suspicion purposes does not mean his presence turned the situation into an emergency. *See Missouri v. McNeely*, 133 S. Ct. 1552, 1559 (2013) ("To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, this Court looks to the totality of circumstances."); *King*, 563 U.S. at 470 (holding that the exigent circumstances exception to the warrant requirement can apply only if it is "supported by a genuine exigency"). But to the extent failing to arrest Walls helped cultivate an ongoing risk of danger, surely the officers did not *create* this risk: Walls was already in the passenger seat of the car when they arrived on the scene, and there is nothing in the record that would lead us to believe it was fundamentally unreasonable for the officers to leave him there while they questioned and frisked Defendant. *King*, 563 U.S. at 462 (holding that officers do not create an exigency "when the conduct of the police preceding the exigency is reasonable"). A vast difference exists between saying the government's actions were objectively unreasonable and formulating all the possible ways the government could have acted differently in hindsight.

these encounters historically have proven to be especially dangerous to officers.

Moreover, additional circumstances existed that justified reasonable suspicion. For instance, although the officers were not aware of the bases for Walls's arrest warrants, they were entitled to "infer a common purpose or enterprise between the two men and believe that [Defendant] knew of [Walls's] arrest warrants and would want to conceal evidence of any wrongdoing." *Dennison*, 410 F.3d at 1213 (internal quotation marks omitted). Walls had also been acting suspiciously when Deputy Dobler initially approached the vehicle by blocking his view of Defendant. *See Rice*, 483 F.3d at 1085 ("A reasonable officer can infer from the behavior of one of a car's passengers a concern that reflects on the actions and motivations of the other passengers."). To top it off, the traffic stop occurred in a high-crime area in nighttime darkness. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.").

When added to the fact that the officers would have been vulnerable to an attack when searching Defendant's vehicle, these additional circumstances indicate that the officers here, like the officers in *McRae* and *Manjarrez*, could reasonably be concerned for their own safety. And because of these heightened officer safety concerns, the officers could reasonably *suspect* Defendant was armed and pat him down. This conclusion remains true even though Deputy Dobler testified that Defendant had not done anything to cause him any fear during the stop. *See Neff*,

14

300 F.3d at 1222 (holding that courts must "look at the objective facts, not the officer's state of mind" when "measuring the actions of a police officer under the Fourth Amendment"); *McRae*, 81 F.3d at 1536 ("Officer Colyar did not himself ever indicate, nor testify, that he in fact felt that his safety was in jeopardy. We nonetheless hold that the district court did not err in finding that Officer Colyar had articulable suspicion to frisk Mr. McRae. The *Terry* stop standard is objective . . . . The facts available to Officer Colyar here . . . would warrant a man of reasonable caution to believe that a frisk would be necessary to protect himself.").

Defendant's efforts to distinguish *McRae* and *Manjarrez* ultimately prove unavailing. These cases extend to the facts here and demonstrate the officers could pat-down Defendant. Allowing Defendant to sit in the back of the patrol vehicle without frisking him would have invited an attack on the officers, and the officers were justified in ensuring this risk did not become reality. Consequently, we conclude the officers had sufficient reasonable suspicion to frisk Defendant.[7]

## V.

Given the circumstances of the traffic stop, the officers were justified in frisking Defendant because they reasonably suspected he was armed and dangerous. The district court's denial of Defendant's Motion to Suppress is therefore

AFFIRMED.

---

[7] In this instance, the fact that a third officer arrived in the middle of the pat-down has little significance. Once the pat-down had started, the officers were not required to leave it unfinished simply because another officer showed up to the scene.