**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 8, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff - Appellant,

v.

JOSE A. ALEMAN,

  Defendant - Appellant.

No. 15-3321
(D.C. No. 2:13-CR-20078-KHV-1)
(D. Kan.)

## ORDER AND JUDGMENT[*]

Before **TYMKOVICH**, Chief Judge, **McKAY**, and **BALDOCK**, Circuit Judges.

Kansas City police pulled over Jose Aleman for running a stop sign. After obtaining Aleman's information, the officers discovered an outstanding warrant for his arrest. During the encounter, the officers obtained permission from Aleman's passenger, the owner of the car, to search the vehicle and found a firearm under the driver's seat. A federal grand jury subsequently indicted Aleman for possession of a firearm by a convicted felon, a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Aleman sought to suppress the evidence and testimony resulting from the stop, arguing that the officers lacked reasonable suspicion that Aleman had violated the law prior to the stop, and thus obtained the evidence in violation of the Fourth Amendment. A magistrate judge heard Aleman's motion to suppress and recommended that the district court deny the motion. The district court conducted a second evidentiary hearing and concluded, like the magistrate judge, that the traffic stop was properly based on a suspected traffic violation.

Aleman appealed, and, exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Kansas City Police Officers Webb and Shepard were on a routine patrol when they stopped Aleman's car for running a stop sign and a suspected license plate violation.[1] At a hearing before the magistrate judge, Officer Webb testified he first noticed the car "as we were entering the intersection" when it was "past the stop sign, which is before the sidewalk and curb." R., Vol. 1 at 60. The patrol car "slowed because [the officers] didn't think [Aleman's] vehicle was going to stop because it was rolling through the intersection," and the patrol car

---

[1] After the officers witnessed the stop sign violation and made a U-turn to pursue the car, they noticed the license plate was either obstructed or removed from the vehicle. But once the officers moved closer to the car, the record indicates they were able to determine that the car had a valid 60-day license tag. Accordingly, what the officers initially identified as a license plate violation would not provide reasonable suspicion for the stop past that point in time.

"had to almost come to a stop," though it proceeded through the intersection before Aleman's vehicle. *Id.* at 53. The officers then pursued the car and initiated the stop.

After an evidentiary hearing, the magistrate judge found:

> The traffic stop was justified at its inception because the officers had reasonable suspicion to believe first that Defendant had failed to properly stop at a stop sign, and second that the [car] was not displaying a license plate. Although Officer Webb testified on cross-examination that the [car] was past the stop sign when he first saw it, his testimony and the marks he made on a map to show the location of the two vehicles vis-à-vis each other persuade the Court that the officers' reasonable suspicion that the [car] had not come to a complete stop behind the stop sign was supported by 'objectively reasonable' good faith belief. Officer Webb's testimony that the patrol car slowed because it did not appear Defendant was going to stop supports the conclusion that the [car] was traveling at such a rate of speed that it could not have stopped at the sign.

*Id.* at 35.

After receiving the magistrate judge's recommendation, the district court held a second evidentiary hearing to clarify the record. On direct examination, Officer Webb testified that "[the car] passed the stop sign, stopped, and then went on through at a high rate of speed," and clarified that the traffic infraction he witnessed was a "rolling stop past the stop sign," because Aleman "didn't come to a complete stop. And when he did, it was past the stop sign[.]" R., Vol. 2 at 9–10. The court asked Officer Webb if Aleman had stopped, but stopped in the

wrong place, and he responded, "[s]topped in the wrong place but he didn't come to a complete stop past—he just went right on through." *Id.* at 11. The court asked several follow-up questions, including whether Aleman stopped his vehicle, whether he stopped in the wrong place, and what "stop" meant to the officer. *Id.* When the court asked if Aleman "did stop but he stopped in—partly in the intersection and not a hundred percent where the stop sign was," Officer Webb responded, "[y]es, ma'am." *Id.*

After cross-examination, the district court asked Officer Webb to explain again what he had witnessed, and the officer said that Aleman "rolled through the intersection. He slowed to make a motion to stop and went through the intersection." R., Vol. 2 at 12. The district court again asked for clarification, because she thought that Officer Webb had previously testified that Aleman had stopped, and "there's no such thing as a stop that is not a complete stop. I mean, a stop means you're standing still." *Id.* at 13. Officer Webb clarified that there is "no [specific] ordinance for us to write that he just rolled a slowing California roll," which he described as "not com[ing] to a complete stop, attempting to stop or slowing as to make it look like you stopped and continu[ing] through the intersection"; instead, a "California roll" is covered by the broad wording of the improper stop ordinance. *Id.* at 14–15. In contrast, the officers would have cited Aleman for a stop sign violation if he had blown through the intersection without attempting to stop at the stop sign at all. *Id.*

-4-

After the evidentiary hearing, the district court ultimately agreed with the magistrate judge's report and recommendation, concluding that "Officer Webb had an objectively reasonable belief, based on how fast he saw defendant's vehicle traveling, that defendant had not come to a complete stop at the stop sign." R., Vol. 1 at 116.

## II.  Analysis

Aleman contends the district court clearly erred in finding he ran a stop sign, and therefore the officers had no lawful basis for the traffic stop.

### A.  *Reasonable Suspicion*

When reviewing a denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous.  *United States v. Williams*, 271 F.3d 1262, 1266 (10th Cir. 2001).  "The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court."  *United States v. Long*, 176 F.3d 1304, 1307 (10th Cir. 1999).  We also consider the evidence in the light most favorable to the government.  *United States v. McAlpine*, 919 F.2d 1461, 1463 (10th Cir. 1990).  We review questions of law de novo, however, including the ultimate determination of reasonableness under the Fourth Amendment.  *Williams*, 271 F.3d at 1266.

A traffic stop is considered a seizure under the Fourth Amendment, so it must be justified at its inception, when the officer intrudes on the motorist's

liberty interest. *United States v. Martinez*, 512 F.3d 1268, 1272 (10th Cir. 2008). At its inception, a traffic stop is justified "if the officer has either (1) probable cause to believe a traffic violation has occurred or (2) a reasonable articulable suspicion that 'this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.'" *United States v. Martinez*, 512 F.3d 1268, 1272 (10th Cir. 2008) (quoting *United States v. Ozbirn*, 189 F.3d 1194, 1197–98 (10th Cir. 1999)).

"Whether reasonable suspicion exists is an objective inquiry determined by the totality of the circumstances, and an officer's subjective motivation for the stop plays no role in ordinary reasonable suspicion Fourth Amendment analysis." *United States v. Salas*, 756 F.3d 1196, 1201 (10th Cir. 2014) (quoting *United States v. Harmon*, 742 F.3d 451, 456 (10th Cir. 2014)) (alteration incorporated; internal quotation marks omitted). In reviewing an investigatory stop for reasonable suspicion, we consider "the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)); *see also United States v. Neff*, 681 F.3d 1134, 1138 (10th Cir. 2012) (applying this standard). "In the end, reasonable suspicion must meet only a 'minimum level of objective justification.'" *United States v. Fager*, 811 F.3d 381, 386 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 293 (2016) (quoting *United States v. Garcia*, 751 F.3d 1139,

1143 (10th Cir. 2014)).  And reasonable suspicion "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard."  *Arvizu*, 534 U.S. at 274.

Under the traffic laws of Wyandotte County, "every driver of a vehicle approaching a stop sign shall stop . . . at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it."  Aplt. Br. at 8 (citing Wyandotte County Ordinance § 35-374(b)); *see also* K.S.A. 8-1528 (substantively, though not completely, identical language).[2]

### B.  Application

Aleman contends the district court clearly erred because the testimony of the officers leaves open the possibility that he stopped at the stop sign before the officers had a view of the car and then pulled forward to get a better view of the oncoming traffic.  *See* Aplt. Br. at 27–28.  But our inquiry is not whether the facts presented leave open the *possibility* of an outcome favorable to the defendant. Instead, we consider whether the district court's factual conclusion—which was unfavorable to the defendant—is clearly erroneous.

Officer Webb's testimony provided sufficient evidence that he had an objectively reasonable belief, based on how fast he observed Aleman's vehicle

---

[2]  The government apparently failed to introduce the ordinance into evidence, and so the only record of the ordinance on appeal is what was reproduced in Aleman's opening brief.  *See* Aplt. Br. at 8.

traveling, that Aleman had not come to a complete stop at the stop sign. Officer Webb first noticed Aleman's car when it was just past the stop sign and was "rolling" through the intersection at a speed fast enough to cause Officer Shepard, driving the police cruiser, to slow down out of concern that the car was approaching too quickly to allow the cruiser the right-of-way through the intersection. Although Officer Webb didn't see Aleman's car before the stop sign, this testimony supports the inference that Aleman was driving too fast to have stopped at the stop sign.

As the government notes, stopping past the stop sign and rolling through the stop sign are not mutually exclusive events. Logically, if a car rolls through a stop sign but then eventually comes to a complete stop, it will necessarily stop *past* the stop sign. In either event, the traffic violation occurs if the motorist did not properly stop the vehicle at the stop sign. Officer Webb's testimony supports the inference that Aleman did not come to a complete stop at the stop sign, and thus violated the Wyandotte County traffic ordinance.

The district court's order on the motion to suppress is affirmed.[3]

Entered for the Court

Timothy M. Tymkovich
Chief Judge

---

[3] In a letter submitted to the court pursuant to Fed. R. App. 28(j), the government calls our attention to the Supreme Court's decision in *Utah v. Strieff*, 136 S. Ct. 2056 (2016), which was handed down four days after the government submitted its brief in this case. The government argues that even if the stop were improper, the evidence received from Aleman's vehicle could still be admitted under the attenuation doctrine. As we hold that the stop was proper, we need not address this additional argument.